32 B.R. 219 (1983)
In the Matter of Philander P. CLAXTON, III, Bankrupt.
Richard A. BARTL, Receiver in Bankruptcy, Plaintiff,
v.
Jeffrey T. TWARDY, Esquire and Edward M. Waibel, Defendants.
Bankruptcy No. 79-684-A.
United States Bankruptcy Court, E.D. Virginia, Alexandria Division.
August 8, 1983.
*220 Richard J. Stahl, Annandale, Va., for bankrupt.
Richard A. Bartl, Alexandria, Va., trustee in bankruptcy.
Robert O. Tyler, Alexandria, Va., for Richard A. Bartl.
George Ball, Jr., Alexandria, Va., for Edward M. Waibel.
Jeffrey T. Twardy, Alexandria, Va., pro se.
Ronald L. Walutes, Annandale, Va., trustee in bankruptcy, for Watkins Corp.

MEMORANDUM OPINION
MARTIN V.B. BOSTETTER, Jr., Bankruptcy Judge.
In this action, Richard A. Bartl, Receiver in Bankruptcy[1], (hereafter "the Trustee") seeks to avoid a deed of trust in the amount of $20,000.00 executed by the bankrupt to secure a promissory note to defendant Edward M. Waibel ("Waibel"). The basis for the Trustee's complaint is the allegation that the deed of trust is a voidable preference under Section 60a of the Bankruptcy Act of 1898 ("the Act")[2].
The property securing the deed of trust is part of a seven-acre tract, formerly the residence of the bankrupt, located in McLean, Virginia. Jeffrey T. Twardy is named trustee in the deed of trust.
*221 Under Section 60a of the Bankruptcy Act, there are six elements of a preference, all of which must be shown if the transfer is to be avoided. The six elements are: a debtor (1) making or suffering a transfer of his property, (2) to or for the benefit of a creditor, (3) for or on account of an antecedent debt, (4) while insolvent, (5) within four months prior to the filing of the petition (6) the effect of which transfer will be to enable the creditor to obtain a greater percentage of his debt than some other creditor of the same class. Bankruptcy Act § 60a; 3 Collier on Bankruptcy (14th ed.), ¶ 60.02, pp. 758-59 (1977). In addition, under Section 60b, the preference is avoidable only where the Trustee also establishes that the transferee had reasonable cause to believe that the debtor was insolvent. Bankruptcy Act § 60b; 3 Collier on Bankruptcy (14th ed.), ¶ 60.02, p. 760 (1977).
There is no dispute here that property of the debtor was transferred to a creditor. The note secured by the deed of trust was given for a loan evidenced by several checks dated February 21, 1979 through April 4, 1979. Only copies of these checks were tendered as exhibits, and the bank stamps indicating the date of payment are not legible on the exhibits. Accordingly, the Court must find that the debt in question arose no later than April 4, 1979.
The note and deed of trust both bear the date April 15, 1979, and the deed of trust was recorded May 7, 1979. While the note and deed of trust may have been executed contemporaneously, with only recording being effected later, it is clear that the debt for which the note was given originated earlier. Accordingly, the Court finds that the deed of trust in favor of Waibel constituted a transfer of the debtor's property to a creditor for or on account of an antecedent debt.
The involuntary petition against Claxton, III was filed June 26, 1979, less than four months after either the date of recording or the apparent date of execution of the deed of trust. Thus, the transfer occurred within the period of avoidability. The effect of the granting of the deed of trust, if the trust were upheld, would be to convert Waibel from an unsecured creditor with little chance of recovery from the bankruptcy estate into a secured creditor able to realize the full amount of his debt from the bankrupt's real estate. Thus, the effect of the transfer, if it is not avoided, would be to enable defendant Waibel to obtain a greater percentage of his debt than other creditors of his pre-transfer, unsecured class.
Remaining to be determined are two related issues: whether Claxton, III was insolvent at the time of the transfer, and whether defendant Waibel had reasonable cause to believe Claxton, III was insolvent. Section 1(19) of the Bankruptcy Act deems a person insolvent "whenever the aggregate of his property . . . shall not at a fair valuation be sufficient in amount to pay his debts." Bankruptcy Act § 1(19). Insolvency need not be proved by direct evidence but may, and indeed often must, be proved by other facts from which the ultimate fact of insolvency may be presumed or inferred. In re Entertainment Incorporated, 375 F.Supp. 390 (E.D.Va.1974) and cases cited therein.
This Court has adjudicated Claxton, III a bankrupt. Matter of Claxton, 21 B.R. 905 (Bkrtcy.E.D.Va.1982). Adjudication alone is not conclusive of the issue of insolvency. Gratiot County State Bank v. Johnson, 249 U.S. 246, 39 S.Ct. 263, 63 L.Ed. 587 (1919). However, adjudication properly may be considered as evidence of insolvency. In this case, Claxton, III vigorously contested the involuntary petition, and adjudication resulted only after extensive evidentiary hearings. Accordingly, there is little dispute that Claxton, III was insolvent on the date the involuntary petition was filed, June 26, 1979. The issue to be determined here is whether Claxton, III was insolvent seven to ten weeks earlier, during the period April 15 to May 7, 1979.
Two witnesses testified at trial on behalf of the Trustee. They were Richard A. Bartl, the Trustee herein, and Samuel F. Neel, who, at the time of the transfer in question, was chairman of the board of Watkins Corporation ("Watkins"). Neel *222 testified that Claxton, III, who had founded Watkins, was a shareholder, a director and the chief executive officer of the corporation.
Neel testified that in the spring of 1979 Watkins already was in the severe financial distress which led to its filing of a voluntary petition for liquidation bankruptcy on May 10, 1979. The corporation's debts included $1.6-million in unpaid withholding taxes due the United States, of which more than $1-million represented trust funds for which Claxton, III potentially was personally liable. In addition, the corporation was in default to its major creditors on obligations which had been personally guaranteed by Claxton, III. Neel testified further that Claxton, III owed the corporation approximately $900,000.00 which he had withdrawn for non-corporate purposes.
On the date Claxton, III executed the note and deed of trust to Waibel, April 15, 1979, the bankrupt held in excess of one-million shares in Watkins. Neel testified, however, that on April 20, 1979 the corporation transferred these shares on its books to third parties. The shares had been escrowed to secure payment of a note made by Claxton, III. Thus, by the time the Waibel deed of trust was recorded, Claxton, III no longer owned these shares. Whether Claxton, III owned the shares or not, however, Neel testified that they were worthless.
Neel also testified that Waibel, who was president of Watkins, possessed detailed knowledge of Claxton, III's financial condition. Neel testified that he had seen the undeposited checks for the unpaid withholding taxes in Waibel's office, that Waibel had participated in the negotiation of the loans which Claxton, III had personally guaranteed, and that Waibel knew Claxton, III had withdrawn $900,000.00 from the corporation.
The Trustee in Bankruptcy testified that he had investigated the collectibility of the assets listed by Claxton, III in his bankruptcy schedules. This investigation revealed that the sole asset which could yield any funds for the benefit of creditors was the McLean real estate. The Trustee had no schedules from which to work until the summer of 1980 due to the protracted adjudication hearings in this case. He testified, however, that he had found nothing to indicate that the other assets, which included inactive partnerships and an unsecured note the maker of which could not be located, had been collectible at the time the bankruptcy petition was filed. On April 15, 1979, Claxton, III had equity in the McLean property in the approximate amount of $500,000.00.
In the bankruptcy schedules, which were admitted into evidence in this proceeding by stipulation, Claxton, III acknowledged debts totalling $347,438.70. These debts when combined with the bankrupt's liabilities to and on behalf of Watkins leave little, if any, doubt that Claxton, III was insolvent on April 15, 1979. In addition, it is clear from the uncontradicted testimony of Neel that defendant Waibel, on said date, had reasonable cause to believe that Claxton, III was insolvent.
Accordingly, for all the foregoing reasons, the Court finds that the deed of trust given to defendant Waibel was a voidable preference under Section 60 of the Bankruptcy Act and is, therefore, null and void ab initio.
Shortly before trial of this matter, Waibel advised the Court through counsel that he had been paid on the note. The person making payment, according to the letter of counsel admitted as an exhibit in this proceeding, was Susan Williams.
Ms. Williams also was the defendant in a prior action by the Trustee to avoid two deeds of conveyance made to her pursuant to foreclosure sales at which she purchased the McLean property. Matter of Claxton, 30 B.R. 199 (1983). At trial of that action, Ms. Williams testified that she had paid Waibel and tendered to the Court as an exhibit a copy of the note marked "Payment Received $20,000.00 Principal $761.64 Interest Edward M. Waibel". Another copy of the note, showing the same notation of payment, was admitted as an exhibit in this proceeding, and the Trustee at trial requested *223 the Court to take judicial notice of Ms. Williams' statement at the earlier trial.
Rule 201 of the Federal Rules of Evidence gives the trial court wide discretion regarding judicial notice. Fed.R.Evid. 201. Indeed, Subsection (d) of Rule 201 requires the court to do so when "requested by a party and supplied with the information." Fed.R.Evid. 201(d). The Court here concludes that judicial notice should be taken of Ms. Williams' statement that she paid the Waibel note in December 1980. See, Matter of Claxton, 30 B.R. 199, supra.
Susan Williams, who "paid" the note, was not, however, its maker. Accordingly, under the Uniform Commercial Code as enacted in Virginia, payment and surrender of the note[3] to Ms. Williams did not discharge its maker, Claxton, III. Rather, Ms. Williams was a purchaser who acquired the rights of her transferor, Waibel, including any rights to enforce payment. 1950 Code of Virginia §§ 8.3-603(2), 8.3-201(1), and 8.3-301 (1965).
If Ms. Williams, in purchasing the note, acquired the status of a "holder in due course" under Virginia Code § 8.3-302, however, she could have gained greater rights and her right to recovery might not be cut off merely by the voiding of the preferential transfer to Waibel. This Court has avoided the foreclosure sales by which Ms. Williams acquired the McLean property. Matter of Claxton, 30 B.R. 199, supra. Title to the property, accordingly, now is vested in the Trustee in Bankruptcy. Thus, Ms. Williams must assert her right to payment, if any, against the bankruptcy estate. Certain additional facts adduced by the Trustee in the prior action against Ms. Williams, however, demonstrate that she is not a holder in due course and that it would be inequitable to permit her to enforce the obligation as a secured claim against the property.
A bankruptcy court's discretion in adversary proceedings to take judicial notice sua sponte of information contained in its files on other matters within the bankruptcy case has, in some instances, been restricted. The Third Circuit Court of Appeals has ruled that a court may not take judicial notice sua sponte of the bankrupt's schedules. In re Aughenbaugh, 125 F.2d 887 (3rd Cir.1942). Lower courts within the Third Circuit adhere to this rule. See, e.g., In re Birchminster Corp. of California, 6 B.R. 258 (Bkrtcy.E.D.Pa.1980). Bankruptcy courts located in other circuits, however, have taken judicial notice of their own related court records. See, e.g., Matter of Maplewood Poultry Co., 2 B.R. 545 (Bkrtcy.D.Me.1980); Matter of Harland, 3 B.R. 597 (Bkrtcy.D. Neb.1980); In re Ponn Realty Trust, 4 B.R. 226 (Bkrtcy.D.Mass.1980); In re Hollander, 25 B.R. 905 (Bkrtcy.W.D.Mo.1982). In appropriate cases, courts have reached beyond the bankruptcy proceedings to take judicial notice of the record in other cases involving activities of a debtor. Meyerson v. Werner, 683 F.2d 723 (2nd Cir.1982); In re D.H. Overmyer Telecasting Co., Inc., 23 B.R. 823, 927-28 (Bkrtcy.N.D.Ohio 1982).
This Court is within the jurisdiction of the Fourth Circuit. The rule of Aughenbaugh, supra, accordingly is persuasive only and not binding authority. In addition, in the instant case, equity demands that the Court take judicial notice of relevant facts affecting the transaction between Waibel and Ms. Williams which were disclosed in the prior action.
Approximately three months after Ms. Williams purchased the McLean property, she married the bankrupt. At trial, a year after her marriage, she failed to acknowledge her married status in response to a direct question by counsel for the Trustee. Subsequently, the Trustee presented the marriage certificate and the Court admitted it as additional evidence. Further, Ms. Williams admitted at the trial that she had bid on the property upon Claxton, III's assurances that she would be permitted to purchase with only unsecured personal notes. At the time of trial, she was attempting to *224 sell the property to a newly-formed corporation pursuant to a contract bearing what appeared to be a fictitious signature. The source of the payment to Waibel apparently was this same corporation. The Court characterized these and other activities by Williams' husband, Claxton, III, as "a blatant attempt to keep the property out of the bankruptcy estate" and retain "the property or its proceeds for his own use." Matter of Claxton, supra at 213.
To qualify as a holder in due course, the holder of an instrument must have taken the instrument "(a) for value; and (b) in good faith; and (c) without notice that it is overdue or . . . of any defense against or claim to it on the part of any person." 1950 Code of Virginia § 8.3-302 (1965). The note in question states that it is "due and payable on September 30, 1979." Thus, the instrument itself gave notice to anyone who read it after that date that the note was overdue. Ms. Williams having offered a copy of the note as an exhibit in her own behalf within a week of making payment must be charged with notice that the note was overdue. See, 1950 Code of Virginia § 8.3-304(3)(a) (1965). As the wife of the bankrupt and an active participant in his post-petition activities, Ms. Williams also must be charged with notice that the transfer to Waibel was vulnerable to a preference action by the Trustee. See, 1950 Code of Virginia § 8.3-304(1)(b) (1965).
Thus, Ms. Williams had notice both that the instrument was overdue and of a defense against the instrument. Accordingly, the Court finds that she cannot be a holder in due course of the Waibel note. Ms. Williams, therefore, cannot assert any rights to recovery thereon greater than could be asserted by her transferor, Waibel. The deed of trust to Waibel having been avoided, the note formerly secured by said deed of trust is now merely a general unsecured obligation of the bankrupt.
An appropriate Order will enter.
NOTES
[1] Richard A. Bartl, who was receiver for Claxton, III, at the inception of this action, is now Trustee in Bankruptcy for the estate of Claxton, III.
[2] Claxton, III is the subject of an involuntary petition filed June 26, 1979, prior to the October 1, 1979 effective date of the Bankruptcy Code, the current Title 11 of the United States Code. Accordingly, this case continues to be governed by the former Bankruptcy Act of 1898. (Act of November 6, 1978, PL 95-598, Title IV § 403(a), 92 Stat. 2683.)
[3] The Court has before it no evidence relating to whether Ms. Williams is or is not in possession of the note. Her statement that she paid the note, however, raises a strong inference that she obtained the document.