**In re TRANS AIR, INC., f/k/a Trans Island Airways, Inc., Debtor.**

**CHASE MANHATTAN BANK, N.A., Plaintiff,**

v.

**Janice Leigh DENT, A.I.M. Investment Corp., and Trans Air, Inc., Defendants.**

**Bankruptcy No. 86–02525–BKC–SMW. Adv. No. 86–0609–BKC–SMW–A.**

United States Bankruptcy Court, S.D. Florida.

Nov. 4, 1988.

William C. Stallions, Fort Lauderdale, Fla., for defendants.

Arthur C. Neiwirth, Fort Lauderdale, Fla., for trustee.

## ADDITIONAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE having come before the Court upon remand from the United States District Court for the Southern District of Florida, 86 B.R. 290. for Additional Findings of Fact and Conclusions of Law and the Court being fully advised in the premises, does hereby make the following Additional Findings of Fact and Conclusions of Law:

Janice L. Dent ("defendant") appealed to the United States District Court the final judgment entered by this Court setting aside as a preferential transfer $20,500.00 transferred to Mrs. Dent by Chase Manhattan Bank ("bank") pursuant to an assignment by Trans Air, Inc., (the "debtor") under 11 U.S.C. § 547(b)(4)(B). This Court previously held that Mrs. Dent was an insider, under 11 U.S.C. § 101(30)(B)(vi), when the debtor executed the assignment of a bank account held in the debtor's name

to Mrs. Dent in January 1986. This Court further found that Mrs. Dent's insider status became fixed at the point of execution and not at the subsequent perfection date in May 1986.

On remand this Court is directed to determine whether Mrs. Dent was an insider on May 6, 1986, the day the transfer was "made" according to 11 U.S.C. § 547(b)(4)(B) and whether the debtor was insolvent at the time of the transfer.

There is no dispute that on the date the assignment from the debtor to Mrs. Dent was prepared and signed in January 1986 Mrs. Dent was an insider by virtue of Mr. Dent's position as major stockholder and Chief Executive Officer of the debtor corporation. Thereafter, on April 20, 1986 Mr. Dent sold his interest in the debtor corporation to George Gore ("Gore"). As part of the sale the parties agreed that Mr. Dent would continue as Chief Executive Officer for a period of 2 years with an annual compensation.

On May 6, 1986, Mr. Dent and Mr. Gore signed a second letter agreement wherein they amended and finalized certain details concerning the sale of the debtor corporation. The letter agreement indicated that effective Friday May 2, 1986 Mr. Dent would no longer be employed by the debtor corporation. Therefore, Mrs. Dent argues that her husband's relinquishment of his ownership rights and control in the debtor corporation on April 20 or alternatively on May 2, 1986, extinguished her insider status.

■ Under 11 U.S.C. § 101(30)(B) an insider is a person or entity with "a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor." *In the Matter of Missionary Baptist Foundation of America, Inc.*, 712 F.2d 206 (5th Cir.1983). In addition, if the debtor is a corporation, its insiders may include any "officer, director, controlling person, partnership in which the debtor is a general partner, general partner of the debtor, or relative of a general partner, director, officer, or controlling person." *In the Matter of Missionary Baptist Foundation of America, Inc.*, 712 F.2d at 210 (emphasis added); *See also DeRosa v. Buildex Incorp. and Instrument Systems Corp., (In re F & S Central Manufacturing Corp.)*, 53 B.R. 842, 848 (Bankr. E.D.N.Y.1985). Furthermore, where a director remains in a position to exert considerable influence over the affairs of the debtor corporation, even though the corporation has been sold to a new entity, a bankruptcy court may find that the insider status has not been cured. *In re Michigan General Corporation*, 77 B.R. 97, 105 (Bankr.N.D.Tex.1987).

■ The Court finds that Mrs. Dent's insider status was not cured by virtue of her husband's sale of the debtor in April 1986 because Mr. Dent remained in a position to exert considerable influence and control over the debtor and Mr. Gore. Mr. Dent continued to be involved in the debtor corporation as Chief Executive Officer after the sale of the debtor corporation on April 20, 1986. Although the letter agreement indicates that Mr. Dent's employment would cease on May 2, 1986 the agreement was not executed until May 6, 1986. Therefore, between April 20, 1986 and May 6, 1986, Mr. Dent was involved in the operation and financial decisions of the debtor corporation together with Mr. Gore, as well as, the negotiations to finalize the sale. In addition, Mr. Dent was the owner of several airplanes leased to the debtor for a period of five years and was also responsible for renting the premises presently occupied by the debtor to them until the end of May 1986. Furthermore, Mr. Dent and the debtor corporation agreed to pay the IRS on May 6, 1988, a portion of the amount past due by the corporation for taxes which Mr. Dent was secondarily liable for all or a portion of the debt. Moreover, Mr. Dent retained the option of pursuing the debtor's claim against Piedmont Airlines in the event that the debtor chose not to pursue the action against the airline. Therefore, the Court finds that Mrs. Dent was an insider on May 6, 1986 by virtue of her relationship to Mr. Dent and his continued

involvement and control over the debtor corporation on May 6, 1986, and thereafter.

Secondly, this Court must determine whether the debtor was insolvent on the date of the transfer. In determining whether a transfer is voidable under 11 U.S.C. § 547(b)(3) a bankruptcy court must find that the debtor was insolvent at the time of the transfer. *McWilliams v. Gordon* (*In re Camp Rockhill, Inc.,*) 12 B.R. 829, 834 (Bankr.E.D.Pa.1981). Furthermore, under 11 U.S.C. § 547(f) the debtor is presumed to be insolvent during the 90 days immediately preceding the filing of the petition. *In re Camp Rockhill, Inc.,* 12 B.R. at 833. However, this presumption does not apply to transfers which occur more than 90 days before the filing of the petition. *In re Camp Rockhill, Inc.,* 12 B.R. at 834. Therefore, the trustee must prove the debtor's insolvency on the date the transfer was made. *Id.* at 833.

To determine insolvency a bankruptcy court must make a factual finding as to whether the debtor's liabilities exceed its assets. *Hunter v. S.K. Austin Co.* (*In re Beck*), 25 B.R. 947, 953 (Bankr.N.D.Ohio 1982); *Bartl v. Twardy* (*In the Matter of Claxton*), 32 B.R. 219, 223 (Bankr.E.D.Va. 1983). In addition, in reviewing the debtor's financial condition a bankruptcy court may take judicial notice of the debtor's schedules in order to determine if the debtor was insolvent on the date of the preferential transfer. *In the Matter of Claxton,* 32 B.R. at 223.

The debtor filed for Chapter 11 on August 19, 1986 and the case was later converted to a Chapter 7 on December 30, 1986. Mr. Dent testified that during April of 1986 when he was still operating the company as the chief executive officer the debtor corporation was unable to pay all of its leases, rental and operating expenses as they became due. The debtor was also in the process of being cancelled from a Piedmont contract resulting in the suspension of all cash payments to the debtor and, thereby, leaving the debtor without any income. Moreover, Mr. Dent testified that as of May 6, 1986, the date of perfection of the assignment, the debtor was still unable to make its payments for operations and leases as they became due. In May 1986 the debtor's debts included $626,007.80 in delinquent tax liabilities to the IRS, more than $350,000.00 to the Banco de Bilbao and $45,000.00 to AIM Investment. Therefore, the Court finds that on the date of the challenged transfer the liabilities of the debtor exceeded the value of its assets.

Additionally, the bankruptcy court schedules reflect that the debtor had total assets of $1,000,000.00 and liabilities of $2,845,-000.00 on the date of filing. The Court finds that the bankruptcy schedules are reflective of the debtor's financial situation during the (104) days prior to the filing of its petition as evidenced by its failure to pay its obligations as they became due and the loss of its revenue generating contract with Piedmont in May 1986. Therefore, this Court finds that the debtor was insolvent at the time of the transfer as defined under 11 U.S.C. § 101(31).

In summary, this Court finds that the $20,500.00 transferred to Mrs. Dent by Chase Manhattan Bank pursuant to an assignment by the debtor corporation constitutes a preferential transfer under 11 U.S.C. § 547(b)(4)(B) because Mrs. Dent was an insider on May 6, 1986 making the preference period one year within which the trustee may set aside the transfer. Furthermore, this Court finds that the debtor was insolvent on the date of the preferential transfer under 11 U.S.C. § 547(b)(3) and the transfer is voidable.