Janice DENT, Appellant,

v.

Warren MARTIN, Trustee of Trans Air, Inc., Debtor, Appellee.

Bankruptcy Nos. 88–6150–CIV–JAG, 89–6021–CIV–JAG.

United States District Court,
S.D. Florida,
Fort Lauderdale Division.

April 26, 1989.

Arthur Neiwirth, Fort Lauderdale, Fla., for appellee.

Patricia Dzikowski, Fort Lauderdale, Fla., for appellant.

FINAL ORDER ON
BANKRUPTCY APPEAL

GONZALEZ, District Judge.

· THIS CAUSE has come before the court upon the appeal of Janice Dent from the

order of the bankruptcy court dated November 4, 1988. 103 B.R. 322. This court, by order dated May 31, 1988, 86 B.R. 290, remanded this cause to the bankruptcy court for additional findings on the following two issues: (1) was Janice Dent an insider at the time the Chase Manhattan bank assignment was perfected on May 6, 1986, and (2) was the debtor, Trans Air, Inc., insolvent on the date of the perfection of the assignment, also May 6, 1986. The bankruptcy court made its findings and answered both questions in the affirmative. The appellant, Janice Dent, contends that these findings are erroneous.

The appellant first suggests that the bankruptcy court was in error when it held that Janice Dent was an insider on May 6, 1986. She suggests that the evidence does not support this holding and that the bankruptcy court's findings of fact are clearly erroneous.

■ This court disagrees. As a matter of law, Janice Dent was an insider on the date of this preferential transfer, May 6, 1986. The court also holds that the findings of fact made by the bankruptcy court are not clearly erroneous.

A number of factual findings relied on by the bankruptcy judge support his decision. Janice Dent's husband, James, was a major shareholder and the Chief Operating Officer of the debtor, Trans Air, Inc.

Further, while it is true that Dent was the lessor of the five aircraft to the lessee/debtor, Trans Air, Inc., there is also evidence that Dent's husband, James, was the actual owner of the planes. Therefore, the assignment/transfer to his wife certainly supports the finding of insider status.

More significantly, as part of the May 6, 1986 agreement, James obtained major concessions. The magnitude of the concessions are especially important because they show that James was in control of the debtor. A person in control of a debtor can compel payment of a debt for his benefit. Here, that fact is quite clear. As part of the sale of the company and the termination of James' employment as the CEO,

the debtor agreed to pay approximately $500,000.00 in back taxes due and owing to the Internal Revenue Service. James was secondarily liable for at least a portion of this sizable tax deficiency. Moreover, as part of the May 6 agreement, James also retained a cause of action against Piedmont which belonged to the debtor. Lastly, the debtor agreed to new lease arrangements with James as to the planes used in the debtor's business. All of these factors prove that James was neither a mere employee of the debtor nor just a contract party with a superior bargaining position on the date of the assignment.

Dent's most significant argument hinges on the alleged sale of the debtor's business by James to Mr. Gore. She contends that the sale occurred on either April 20, when the first agreement was signed, or on May 2, when James allegedly terminated his employment as an employee of the debtor.

As pointed out by the trustee, there is clear evidence that the April 20 agreement was breached when the prospective purchaser refused to pay the back taxes. The new agreement, executed on May 6, is the key contract here. By the terms of the April 20 agreement, James sold the business, but was to stay on in the debtor's employment as its Chief Operating Officer for two years. Although the May 6 contract states that James' employment ended on May 2, this contract term is unpersuasive. The concessions obtained by James in the agreement signed on May 6 indicate that he was still in control of the debtor and not a mere employee as of that date. The fact that he allegedly signed the agreement in his personal capacity has little evidentiary value.

Hence, the debtor has sustained his burden of proof as to this element of his claim.

■ The appellant next objects to the second major finding of the bankruptcy court that the debtor was insolvent on May 6, 1986. Once again, this court cannot find merit in the appeal.

To avoid a preferential transfer to a creditor outside the 90–day period prior to the filing of the bankruptcy petition, the trustee must prove, *inter alia*, that the debtor

was insolvent. There is no dispute that the bankruptcy judge recognized the correct test of insolvency. The "balance sheet" approach is rooted in the definition of insolvency. *See* 11 U.S.C. § 101(31). The trustee must prove that the sum of the debtor's debts at the time of the transfer exceeded the fair valuation of the debtor's assets (with certain exceptions stated in § 101).

The appellant focuses on the fact that there are discrepancies in the actual balance sheets filed by the trustee. The trustee filed his initial schedules on September 9, 1986 with an amendment on September 12, 1986. These schedules indicate a debt to equity ratio of 2.8:1 (in millions of dollars). These schedules were evidently submitted on behalf of Mr. Gore who had intimate knowledge as to the value of the company's assets.

On February 9, 1986, the trustee amended the schedules and marked certain of the assets as "undetermined". These amendments were evidently filed by a new attorney, without the aid of Mr. Gore's knowledge, and were submitted in response to an order of the bankruptcy court. The court finds that the bankruptcy judge could have considered these factors in discounting the evidentiary value of the February amendments and could have found that the September schedules reflected a fair valuation of the debtor's estate.

Moreover, there is no doubt as to the propriety of the bankruptcy court's reliance on evidence other than the balance sheets themselves for determining insolvency. *See In re Beck,* 25 B.R. 947, 953 (Bankr.N. D.Ohio 1982).

There was sufficient evidence considered by the bankruptcy judge in his finding of insolvency. First, the magnitude of the debt-asset ratio of 2.8:1 is certainly a persuasive factor. Second, as noted by the trustee, this large ratio reflects numerous large, secured debts owed by the debtor. *See* Appellee's Response at 12–13. Third, the debtor had recently lost a major source of revenue in the form of a contract with Piedmont Airlines. There was testimony considered by the Judge Weaver that this loss left the debtor without any income.

More importantly, there is abundant evidence that the debtor's assets were all encumbered. In the case of its major asset, the airplanes, there is no dispute that the debtor merely leased the planes and did not have any equity interest in them. This evidence is persuasive even without considering the additional fact of the $500,000 tax liability faced by the debtor on May 6 prior to execution of the contract with Mr. Gore.

Finally, the testimony of James Dent at trial was that the debtor, on May 6, could not pay its bills as they came due. The bankruptcy judge mentioned this fact in his opinion. The appellant Dent seizes upon the mention of this as evidence that the court did not correctly apply the balance sheet test or applied a different test of insolvency. However, this conclusion does not follow.

As stated on page five of the bankruptcy court's Additional Findings, the court applied the correct standard for determining insolvency. The appellant is correct in her argument that the fact that the debtor cannot pay its debts as they mature is not the correct test, but this does not mean that this fact cannot be relied upon *as evidence* of insolvency. *Cf.* 4 *Collier on Bankruptcy* 547–100 (L.King ed., 15th ed.) (inability to pay debts does not "necessarily" mean insolvency under the Code).

Therefore, in considering all the above evidence, the bankruptcy judge could properly find that the debtor was insolvent on the perfection date of the assignment, May 6, 1986. This court cannot conclude either that the bankruptcy judge applied the incorrect test of insolvency or that his findings of fact are clearly erroneous. Hence, on this issue, the trustee has met his burden of proof.

Having considered the above matters, and being otherwise duly advised, it is hereby

ORDERED AND ADJUDGED that the Findings of Fact and Conclusions of Law issued by the Honorable Sidney M. Weaver, U.S. Bankruptcy Judge, in his opinion issued November 4, 1988 are hereby AFFIRMED. The appeal is DISMISSED as

lacking merit. The trustee has proven a prima facie case for avoiding the preferential transfer in the form of an assignment directed to Chase Manhattan Bank to Janice L. Dent on May 6, 1986.

DONE AND ORDERED.