### In re Johnnie W. ROBINSON.

### Bankruptcy No. 94–42447 S.

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

Jan. 30, 1996.

---

Johnnie W. Robinson, Pro Se.

David Coop, Chapter 13 Trustee.

Chancery Clerk, Support Division, Gayle Sipes, Deputy Prosecuting Attorney, Little Rock, AR.

Claibourne W. Patty, N. Little Rock, AR, for Scroggins.

## ORDER

MARY D. SCOTT, Bankruptcy Judge.

■ THIS CAUSE is before the Court upon several motions filed by the *pro se* debtor with the assistance of a bankruptcy petition preparer. This case is Mr. Robinson's fourth residence in Chapter 13. Three of his four cases have been unsuccessful.[1] Three different social security numbers were used on the four cases.[2]

### Debtor's Prior Cases

Robinson first filed a Chapter 13 case in 1986, No. 86-4001M, using the social security number 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. While he listed only one creditor, Taylor's Used Cars ("Taylor's"), two creditors appeared in Court asserting claims. A Chapter 13 plan was confirmed and the debtor received a discharge on September 2, 1988.

Robinson's second case was filed on January 20, 1989, with the social security number 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. At this time Robinson had an

---

**1.** The Court may take judicial notice of its own records. *In re E.R. Fegert, Inc.,* 887 F.2d 955 (9th Cir.1989) (appellate panel could take judicial notice of underlying bankruptcy records); *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414 (3d Cir.1988), *cert. denied,* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988) (court could take judicial notice of record in prior bankruptcy proceeding); *In re Saco Local Dev. Corp.,* 711 F.2d 441 (1st Cir.1983) (it is important that the bankruptcy court be able to take judicial notice of the debtor's bankruptcy case as a whole, including documents filed in the case); *In re Trans Air, Inc.,* 103 B.R. 322 (Bankr. S.D.Fla.1988), *aff'd,* 104 B.R. 477 (S.D.Fla.1989)

(judicial notice of schedules to determine insolvency).

**2.** Although similar, the numbers are sufficiently different to obviate any conclusion that the differences are due to typographical error. The fact that the numbers were different on three different occasions also leads to the conclusion that the numbers were deliberately misstated. The social security numbers are as follows:

| Case | SSN |
| --- | --- |
| 86–41000 M | 429–98–7533 |
| 89–40139 F | 429–91–7853 |
| 91–42153 S | 429–98–7533 |
| 94–42447 S | 429–98–7123 |

attorney, Mr. Mahon, who later withdrew due to debtor's refusal to cooperate with him.[3] The debtor listed a few unsecured debts, the larger debts being to Pulaski County Child Support Enforcement and the Internal Revenue Service, and secured debts on his house[4] and automobile. Although a plan was confirmed, the case was later dismissed, on December 26, 1989, due to the debtor's repeated failure to make payments to the trustee.

Robinson's third case was filed *pro se* on September 4, 1991, with the social security number 429–98–7533.[5] The only unsecured debts listed were to Pulaski County Child Support Enforcement and the Arkansas Department of Finance and Administration, the state taxing authority. The only secured debt was on a 1986 Lincoln Towncar. After the trustee had filed four separate motions to dismiss for the debtor's failure to comply with the requirements of the Bankruptcy Code, the debtor obtained counsel who immediately filed new, and, it appears, more complete schedules. During this bankruptcy, Robinson acquired a new home and mortgage.[6] The case was dismissed on October 17, 1994, upon the trustee's fifth motion to dismiss for failure to comply with the Code.

### The Instant Case

■ This case was filed less than two months later, using the social security number 429–98–7123.[7] Although *pro se*, the debtor was assisted by Thomas Womack[8] in the preparation of the petition, schedules, and other documents filed with the Court. The only debts listed were the secured debts on the house and automobile.[9]

---

3. For example, after relief from stay was granted in favor of the mortgagee, the debtor filed a *pro se* pleading asking that the Order granting relief from stay be set aside. From the pleading, it appears that the debtor confused two contested matters. The debtor did not appear at the hearing scheduled on his motion.

4. Relief from stay was granted in order for the mortgagee to pursue foreclosure. Since neither the residence nor the debt was listed in the third bankruptcy, presumably, the house was sold.

5. This is the only petition that disclosed prior bankruptcy filings.

6. According to the Proof of Claim filed by the mortgagee, the residence was purchased in April 1992 with a Kathleen Robinson Floyd who lists the same address as the debtor Robinson in this case. Thus it would appear that Robinson either shares living expenses with another, or should be collecting rent, such that his schedules are likely inaccurate.

 Ms. Floyd also filed two *pro se* Chapter 13 cases, No. 93–41285M, filed on June 17, 1993, dismissed on August 13, 1993, and No. 93–41698F, filed three days after the first was dismissed, on August 16, 1993. This second case was dismissed on the mortgagee's motion, on November 15, 1993.

7. The case was filed approximately one week after debtor's car was repossessed for nonpayment. Inasmuch as the petitions list few or no other creditors other than Taylor's, debtor appears to be using the bankruptcy court to shield against his repeated failures to make car payments. While a debtor may in good faith file a petition in response to the acts of a single creditor, the repeated filings, together with the fact that he fails to list all of his creditors is strong indication of bad faith. *Cf. In re Stathatos*, 163 B.R. 83 (N.D.Tex.1993); *In re Earl*, 140 B.R. 728 (Bankr.N.D.Ind.1992).

8. Womack is well-known to this Court. He has preyed upon debtors for many years to their detriment, *see e.g., In re Robinson*, 155 B.R. 1009 (Bankr.E.D.Ark.1993); *In re Robinson*, 152 B.R. 743 (Bankr.E.D.Ark.1993), and has plagued this court with frivolous motions on his own behalf, *see, e.g., In re Allison Warehouse and Transfer Co., Inc.*, 150 B.R. 704 (Bankr.E.D.Ark.1993) and was enjoined from assisting debtors before this Court. In addition, Womack has filed several cases on his own and on his wife's behalf, none of which have been successful. *See In re Thomas Womack*, No. 88–41880 (Bankr.E.D.Ark. filed Sept. 22, 1988) (chapter 13), dismissed, May 8, 1990, *aff'd*, (E.D.Ark. Jan. 8, 1992); *In re Thomas Womack*, No. 88–40630 (Bankr.E.D.Ark. Chapter 13 case filed Mar. 29, 1988) (dismissed Oct. 28, 1988); *In re Gloria Womack*, 88–42637 (Bankr. E.D.Ark. filed Dec. 29, 1988) (Chapter 13), dismissed Mar. 18, 1991, *aff'd*, No. LR–C–91–384 (E.D.Ark.1991); *In re Thomas Womack*, No. 87–41036 (Bankr.E.D.Ark. May 27, 1987) (Chapter 13 filed; case terminated on Feb. 19, 1988 without discharge); *Gloria Womack v. Fleet Mortgage*, No. 90–4078 (Bankr.E.D.Ark. Mar. 2, 1991) (Order of dismissal); *Gloria Womack v. Derwinski*, No. 90–4128 (Bankr.E.D.Ark. Nov. 2, 1990) (Order of dismissal); *Gloria Womack v. United States*, No. 91–4016 (Bankr.E.D.Ark. Apr. 16, 1991) (Order of dismissal).

9. This information is clearly false. The debtor previously had a debt for child support in the amount of nearly $7,000 in the 1991 case. According to the trustee's report, only $219 was paid to priority creditors in the 1991 case. Ac-

■ On several occasions, contested matters filed in the debtor's bankruptcy case, have been dismissed for the debtor's failure to comply with the Code or due to his failure to appear at hearings. A review of the Court file in the instant case indicates that the Court has been extremely lenient with the debtor, reinstating his case and granting further opportunities to appear and be heard. The debtor has responded, not by complying with the Code in order to settle his debts, but rather, by hurling insults at the Court. In one pleading, the debtor made the following scandalous statement:

> "While debtor appeared before this Honorable Court, debtor felt like he had walked into an all white community of an old southern town that had a rope hanging from the limb of a huge oak tree with a noose at one end, with a note attached, saying, this is where the n---- hang out. * * *

Motion to Vacate Order of Dismissal (filed January 4, 1996). Such impertinent and abusive statements will be stricken from the pleading. *Cf. Stanfield v. Horn,* 704 F.Supp. 1486 (M.D.Tenn.1988) (diatribe against Magistrate stricken); *Davis v. TRM Copy Centers, Corp.,* No. 88C0990, 1988 WL 92921 (N.D.Ill. Aug. 16, 1988) (motions stricken and sanctions imposed for allegations of racism and unethical judicial conduct).

The debtor seeks to set aside several Orders of the Court. Prior to dismissal of this case, there were pending the following matters:

(1) a motion to dismiss filed by the Chapter 13 trustee based upon the debtor's failure to make his plan payments;

(2) a motion for relief from stay by the vehicle lien holder, Taylor's Used Cars; and

(3) the debtor's motion for default judgment in the adversary proceeding, No. 94–4020.[10]

On September 8, 1995, the Court called for hearing Taylor's Motion for Relief from Stay.

The debtor was present. The parties announced a settlement to which the debtor specifically agreed: Taylor's agreed to relinquish the vehicle to the debtor, together with all of the debtor's personal possessions; the debtor agreed to dismiss his adversary proceeding, Case No. 94–4020, against Taylor's; the debtor was to make his payments to the trustee in a timely manner or Taylor's would have the right to repossess the car without further notice or hearing. The Court very specifically inquired of Robinson if he understood these terms. Robinson not only assented to these terms, he stated them in his own words, evidencing his understanding of the terms. The Order which accurately reflects the proceedings in Court was filed on October 11, 1995. While the debtor's motions do not appear to seek relief with regard to this Order, the debtor's statements are sufficiently confused that the Court deems it appropriate to make note of the record proceedings which reflect that the debtor understood and assented to the terms of that Order.

On September 22, 1995, the Court called for hearing the trustee's Order to Show Cause why the Case Should not Be Dismissed. The debtor appeared. The trustee recited that the debtor was $3,882.41 in arrears on his plan payments and pressed for dismissal of the case. The trustee neither offered nor agreed to withdraw his motion based upon the condition that the debtor strictly comply with the plan provision. Rather, *the Court* gave the debtor one more opportunity to comply with the Code: the Court did not dismiss the case, but directed the debtor to "make the September payment in full, and each and every monthly payment in full, on time, which means in the month it is due, or the case will be dismissed without further notice or hearing." The debtor responded, "O.K." Thus, *the Court* directed the terms of the Order; there was no agreement between the trustee and the debtor.

---

cordingly, it would appear that the debtor failed to list all of creditors. Alternatively, if the debtor managed to pay in full the large tax and child support debts, he apparently has undisclosed disposable income. Again, such facts are strongly indicative of bad faith. *See supra* n. 7.

10. A separate order regarding the debtor's motions in the adversary proceeding is entered contemporaneously with this Order.

On December 22, 1995, because the debtor was still not complying with the Code and having failed to make his plan payments, the Court issued an Order dismissing the case.

■■■ The debtor has filed two motions which seek to reverse this dismissal. On October 11, 1995, the debtor filed his "Motion to Set Aside the Court's Order with Duration Rule." Hearing on this motion was held on November 16, 1995, at which time the debtor had the opportunity to argue his motion. On January 4, 1996, the debtor filed his "Motion to Vacate Order of Dismissal, Motion for Order to Reinstate Chapter 13 and Motion for Action and a Decision on Pending Pleading." Both of these motions allege that the Orders should be set aside because he did not agree to the strict compliance provision, referred to in debtor's motion as a "drop dead" provision.[11] While it would appear from the proceedings in open court that the debtor in fact assented to the requirement that all plan payments be timely made, his assent was neither required nor requested. The Court, having long struggled to provide debtor the opportunity to obtain the fresh start in bankruptcy imposed the condition upon the debtor. The case was clearly subject to dismissal: the debtor, on limited and fixed income, was significantly in arrears on a plan that would take sixty months to complete. Since a plan must be completed within sixty months or the case is subject to dismissal for lack of subject matter jurisdiction, 11 U.S.C. section 1322(d), the Court was giving to the debtor a generous opportunity to complete his bankruptcy case. Despite the urging of the trustee,[12] the strictures of

the Code, and despite the impertinent documents filed by the debtor,[13] the Court granted the debtor yet another chance to obtain the relief afforded by the Bankruptcy Code. The debtor chose not to comply with the Orders of Court or the provisions of the Bankruptcy Code thereby causing the default and dismissal of his case.

The debtor further asserts that the strict compliance provision is "unbearable" because he is on a low and fixed income. Debtors in bankruptcy are generally on a low and fixed income. Indeed, that is often the reason for their financial difficulties. If they are unable to make the payments which they proposed in their plans, their plans cannot be confirmed. 11 U.S.C. sections 1325(a)(1), 1322(a)(1) (plan shall provide for income "*as is necessary for the execution of the plan*.") (emphasis added). Chapter 13 exists to provide relief to debtors who can bear the expense of regular monthly payments. If a debtor cannot make such plan payments, then he needs to convert to Chapter 7 rather than protest that Chapter 13 is "unbearable."

Although the debtor has repeatedly and contumaciously failed to comply with the terms of the Bankruptcy Code and Court Orders, in an effort to afford him the opportunity to continue in his case, the Court directed the debtor to make each and every remaining plan payment. The debtor failed to comply with this Order of the Court, failed to make full and timely payments and continued to file scandalous and impertinent pleadings. Accordingly, this bankruptcy case shall

---

11. The debtor also seems to believe that his duty to make payments is suspended by the fact that a default judgment has not been entered in his adversary proceeding against Taylor's. This is incorrect as a matter of law. The debtor was under a continuing obligation to make all plan payments in a timely manner, notwithstanding any other pending proceeding or contested matter. Moreover, the debtor agreed, on the record, to the dismissal of that adversary proceeding on September 8, 1995. The assertion conflicts with his prior agreement with Taylor's, entered into on the record in open Court. Finally, the debtor has never been entitled to default in the adversary proceeding since service of process is defective on its face—the defendants were served with invalid summonses.

12. It is a rare instance that the trustee will press for dismissal if the debtor appears in court and seeks to remain in bankruptcy.

13. The debtor's demeanor in Court contrasts markedly with his pleadings. That is, in Court, he has been generally courteous, leading the Court to the conclusion that Thomas Womack is still preparing the documents thereby exposing the debtor to sanctions for frivolous and untruthful filings. *See Fed.R.Bankr.Proc.* 9011. Further, the pleadings are rife with references to other cases in which Womack "assisted" the debtor. Since it appears that the debtor is ignoring the Court's admonition against accepting the assistance of Womack, the merits of Rule 9011 sanctions become more apparent. *See id.*

remain dismissed. No cause having been shown for reinstatement of the case, it is

**ORDERED** as follows:

1. The debtor's "Motion to Set Aside the Court's Order with Duration Rule," filed on October 11, 1995, is DENIED. The Order of September 28, 1995, reflecting the proceedings on September 22, 1995, remains in effect such that this Chapter 13 case shall remain dismissed.

2. The debtor's "Motion to Set Aside Order of Recusal," filed on October 11, 1995, is DENIED for the reasons stated on the record.

3. All portions of the debtor's "Motion to Vacate Order of Dismissal, Motion for Order to Reinstate Chapter 13 and Motion for Action and a Decision on Pending Pleading," filed on January 4, 1996, asserting abuse of discretion and a pattern of discrimination, including the request that the Court "reframe [sic] from slandering black debtors" are STRICKEN from the motion as scandalous and impertinent. Fed.R.Bankr.Proc. 7012(f), 9014.

4. The debtor's "Motion to Vacate Order of Dismissal, Motion for Order to Reinstate Chapter 13 and Motion for Action and a Decision on Pending Pleading," filed on January 4, 1996, is DENIED. This Chapter 13 case remains dismissed.

5. The "Motion to Adjust Creditor's Debt," filed on December 11, 1995, is DENIED AS MOOT.

**IT IS SO ORDERED.**