In re DIE FLIEDERMAUS LLC,
d/b/a/ Le Bar Bat, Debtor.

Richard E. O'Connell, Chapter 7 Trustee for Die Fliedermaus LLC, d/b/a/ Le Bar Bat Plaintiff,

v.

Gerard J. Shallo, Saul L. Victor, Saul L. Victor P.C. Profit Sharing Plan, Adam Okin A/K/A/ Adam Okin Postal, and Henry Amoroso Defendants.

Bankruptcy No. 01–42518(ALG).
Adversary No. 04–04306.

United States Bankruptcy Court,
S.D. New York.

March 30, 2005.

Goelnbock Eiseman Assor Bell & Peskoe LLP, By Michael S. Devorkin, Esq., Moshie Solomon, Esq., Laura Sulem, Esq., New York City, for Richard E. O'Connell, Chapter 7 Trustee.

Angel & Frankel, P.C., By Joshua J. Angel, Esq., Rick A. Steinberg, Esq., New York City, for Saul L. Victor and the Saul L. Victor P.C. Profit Sharing Plan.

## MEMORANDUM OF DECISION

ALLAN L. GROPPER, Bankruptcy Judge.

Defendants Saul L. Victor ("Victor") and the Saul L. Victor P.C. Profit Sharing Plan ("PSP," and collectively with Victor, the "Victor Defendants") have moved to dismiss the complaint in the above captioned adversary proceeding. The Chapter 7 Trustee of Die Fliedermaus, LLC (the "Debtor"), the plaintiff in the adversary proceeding, opposes the motion. For the reasons stated below, the Court grants in part and denies in part the Victor Defendants' motion.

## BACKGROUND

In 1995, Gerard Shallo, Henry Amoroso, and Adam Okin Postal (collectively with the Victor Defendants, the "Defendants") formed the Debtor, a New York limited liability company, so as to acquire the assets of two restaurants located in New York City.[1] They became its initial members. Later, PSP became a member of the Debtor; in a separate transaction, PSP increased its membership share. At the time of the Chapter 11 filing PSP held a 15.6% share of the Debtor. The Complaint identifies PSP only as an entity controlled by Victor. (Complaint ¶ 11.)

Between 1996 and 2001 the Debtor operated a bar and cabaret located in New York City, New York, under the name Le Bar Bat. As a result of a decline in the restaurant business in New York City and liabilities stemming from a lawsuit by certain former employees (the "Former Employees"), the Debtor filed for Chapter 11 relief on October 4, 2001. On the basis of allegations by the Former Employees that the Debtor had falsely reported its income and that certain of the Defendants had moved the Debtor's assets outside the reach of creditors, the Court directed the appointment of an examiner to investigate whether the Debtor's income had been accurately reported, whether there had been gross mismanagement of the Debtor's operations, and whether any avoidance actions should be brought. On September 23, 2003, the examiner submitted his report.

The examiner's report severely criticized the Debtor's business practices and the controls installed to manage and record cash flow. Based on his inspection, the examiner surmised that the Debtor had likely operated at a loss for the entire period from 1997 to 2001, despite reporting otherwise to the IRS.[2] The examiner also suggested there were potential causes of action against the members arising from the Debtor's payment of distributions to them. The examiner concluded that the Debtor had likely been insolvent when these distributions were made and that the transfers might be avoidable.

Following the examiner's report, an operating trustee was appointed under § 1104 of the Bankruptcy Code. After the sale of substantially all of the Debtor's assets, the case was converted to Chapter 7. This adversary proceeding followed.

## DISCUSSION

### The Allegations of the Complaint

The Trustee alleges five claims for relief against the Defendants.

The Trustee first generally alleges that the Defendants "made distributions to themselves as members of Die Fliedermaus, who were insiders of Die Fliedermaus, at a time when Die Fliedermaus was insolvent, or as a result thereof became insolvent, and such payments constituted fraudulent conveyances" under applicable law. (Complaint at ¶ 18.)[3] Four

---

1. The complaint improperly claims the Debtor was organized under the Limited Liability Company Law of Delaware. (Complaint ¶ 7.) The Trustee admits in his opposition papers that the Debtor was, in fact, organized under the Limited Liability Company Law of New York. (Brief in Opposition at 4.) The Court will permit the Trustee to amend the complaint to correct the error.

2. The Victor Defendants claim that the Debtor had substantial revenues from 1996 to 1999. According to the Defendants, the Debtor reported all its income to the IRS and paid a distribution to them based on those reports. The Debtor reported its first operating loss on its tax returns in 2000.

3. The Trustee randomly calls these distributions "payments" or "transfers." Each count of the Complaint, however, repeats and real-

of the Trustee's counts stem from these transactions and seek avoidance of the distributions as fraudulent conveyances. Count One, brought pursuant to §§ 548 and 544(b) of the Bankruptcy Code and §§ 270–279 of the New York Debtor Creditor Law ("DCL"), charges that the members received fraudulent conveyances intentionally or constructively, paying themselves distributions while aware that the Debtor was either insolvent or would be made insolvent by the distribution. Count Three relies specifically on § 273–a of the DCL and further alleges that the distributions were fraudulent conveyances because they were made in order to move assets out of the reach of potential judgment creditors. Count Five seeks payment of the Trustee's attorney's fees and costs associated with the return of the fraudulent transfers because of the Defendants' alleged "intent to defraud the creditors of Die Fliedermaus." (Complaint at ¶ 60.)

The two remaining counts of the Complaint do not, strictly speaking, assert avoidance claims. Count Two alleges that the Defendants breached their fiduciary duties by (i) paying distributions to themselves while the Debtor was insolvent; (ii) failing to disclose fully all material information to the examiner and trustee; (iii) failing to record and control the Debtor's cash properly; and (iv) causing the Debtor's paid employees to work for unrelated entities that were controlled by some of the members. Count Four alleges that the distributions were in violation of the Debtor's Operating Agreement because that agreement required that all liabilities of the Debtor be satisfied before any distributions could be made.

## The Motion to Dismiss

The Victor Defendants have moved pursuant to Fed.R.Civ.P. 12(b)(6), made applicable through Bankruptcy Rule 7012, to dismiss the complaint. They make four arguments against Counts One, Three, Four and Five of the complaint: first, that they did not receive any distributions during the one-year look-back period for fraudulent conveyances under Federal law, as provided in § 548 of the Bankruptcy Code; second, that the Debtor was not insolvent at the time of any of the distributions; third, that Victor was not personally a member of the Debtor and therefore is not individually liable for return of the distributions; and fourth, that the New York Limited Liability Company Law ("LLCL") provides a safe harbor for certain distributions made to members of an LLC and that certain of the Trustee's claims are barred by a three-year limitations or look-back provision provided in the LLCL.[4] The Victor Defendants further argue that Count Two of the complaint should be dismissed because they were not fiduciaries.

## The Standards on this Motion

Fed R. Civ. P. 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." A court may only dismiss a complaint under Rule 12(b)(6) where it "appears be-

---

leges previous paragraphs, thereby seemingly classifying the payments as distributions. Also, the Trustee's brief in opposition characterizes them as such. (Trustee's Brief in Opposition at 6.) The Court will infer, for purposes of this motion, that the payments to the Victor Defendants were made in the form of distributions.

**4.** The Victor Defendants also argue that the Complaint seeks the return of the distributions as preferences, rather than fraudulent conveyances, because of a reference in the allegations regarding jurisdiction to 28 U.S.C. § 157(b)(2)(F) (preferences) rather than § 157(b)(2)(H) (fraudulent conveyances). This is an obvious scrivener's error which can be amended.

yond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); see also, *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998). The issue under 12(b)(6) is not the weight of the evidence but "whether the claimant is entitled to offer evidence to support the claims." *Johnson v. Bryco Arms,* 304 F.Supp.2d 383, 390 (S.D.N.Y.2004). A court "must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff." *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996); see also, *50 Pine Co. v. CapitalSource Finance, LLC (In re 50 Pine Co.),* 317 B.R. 276, 280 (Bankr. S.D.N.Y.2004).

A court considering a motion under Rule 12(b)(6) is limited to the facts as pleaded in the complaint. *Friedl v. City of New York,* 210 F.3d 79 (2d Cir.2000). There are two options when a movant submits evidence outside the complaint: "the court may exclude the additional material and decide the motion on the complaint alone, or it may convert the motion to one for summary judgment under Fed.R.Civ.P. 56 and afford all parties the opportunity to present supporting material." Fed. R.Civ.P. 12(b); *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). At this stage of the case, and in the absence of any request for such treatment, the Court declines to treat this motion as one for summary judgment; however, as will be obvious below, certain of the claims might later be appropriately dealt with on a summary judgment motion.

### 1. The Timeliness of the Trustee's § 548 Fraudulent Conveyance Claims

■ The Victor Defendants first ask that the Trustee's § 548 fraudulent con-

veyance claims be dismissed because tax returns filed by the Debtor demonstrate that the last distribution they received from the Debtor was in 1999, two years prior to the filing of the Debtor's bankruptcy petition on October 4, 2001. Section 548 of the Bankruptcy Code provides for avoidance of a transfer of a debtor's interest in property made "within one year before the date of the filing of the petition." 11 U.S.C. § 548(a)(1).

The Victor Defendants' contentions, however, rely on facts outside of the complaint, and therefore, are not properly before the Court on a motion to dismiss. The Trustee alleges in the complaint that the Defendants received property of the Debtor through 2002. Taking the facts as alleged in the complaint as true, the Trustee has properly alleged a transfer pursuant to § 548 of the Bankruptcy Code. If the Victor Defendants did not, in fact, receive any transfers after 1999, then the Court can consider this in a motion brought pursuant to Bankruptcy Rule 7056.

### 2. The Debtor's Solvency

■ The Victor Defendants next move to dismiss Counts One, Three, Four, and Five by asserting that the Debtor was solvent at the time of the transfers. Insolvency, however, is a question of fact. *Lawson v. Ford Motor Co. (In re Roblin Indus.),* 78 F.3d 30, 35 (2d Cir.1996). The Victor Defendants themselves demonstrate that solvency is a factual question by relying on the Debtor's tax returns in support of their proposition. Not only are the tax returns outside of the complaint; the incurrence of a liability for taxes is not equivalent to solvency. The Trustee alleges in the complaint that the Debtor was insolvent from 1997 through the filing of the petition, and that is adequate pleading.

See *Danning v. Lavine*, 572 F.2d 1386, 1388–89 (9th Cir.1978); *Pereira v. Cogan*, 2001 WL 243537 at *8 (S.D.N.Y.2001).

### 3. The Avoidance of Property From Victor

■ The Victor Defendants next argue that the Trustee has improperly sought to pierce the corporate veil as against Victor personally by seeking to recover from him distributions paid to PSP. They claim that Victor was never a member of the Debtor and that he is not personally liable for the return of distributions that were made to his personal profit sharing plan. The Bankruptcy Code, however, allows a trustee to reach not only the immediate transferee of a fraudulent conveyance but also mediate transferees and persons for whose benefit a transfer was made. See 11 U.S.C. § 550(a)(1);(a)(2). Thus, Victor is properly a defendant on the fraudulent conveyance counts, and the Trustee has leave to amend to specify his claims against Victor.

■ The Victor Defendants are on stronger ground in their assertion that the complaint is inadequate to the extent it seeks to pierce the corporate veil between Victor and PSP. The complaint is entirely lacking in the detailed allegations that are necessary in order to state a claim for piercing the corporate veil. See *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 138 (2d Cir.1991); *InSITE Servs. Corp. v. Am. Elec. Power Co. (In re InSITE Servs. Corp.)*, 287 B.R. 79, 96 (Bankr.S.D.N.Y. 2002). In his complaint, the Trustee alleges only that PSP is "an entity *controlled* by Defendant Victor" (Complaint at ¶ 11) (emphasis added), and that Victor "caused" the Debtor to make the transactions at issue. (Complaint at ¶ 26; ¶ 50). Although these allegations are not sufficient, the Court will permit the Trustee to amend if he can.

### 4. The Trustee's § 544(b) Claims

The Victor Defendants next argue that any avoidance claims filed against them pursuant to § 544(b) of the Bankruptcy Code should be dismissed as untimely or as prohibited by the New York LLCL.

■ Section 544(b) of the Bankruptcy Code grants a trustee the power to "avoid any transfer of an interest of the debtor in property ... that is voidable under applicable law by a creditor holding an unsecured claim ...." 11 U.S.C. § 544(b). A trustee may "assert those causes of action that could have been timely commenced ... as of the commencement of the [bankruptcy] case." *Hirsch v. Marinelli (In re Colonial Realty Co.)*, 168 B.R. 506, 508 (Bankr.D.Conn.1994). State law limitations periods frame the relevant "lookback" period, thereby allowing the trustee to avoid any transactions that could have been avoided by an unsecured creditor at the time of the filing of the bankruptcy petition. Under applicable New York law, the limitations period for a fraudulent conveyance. action brought pursuant to the New York DCL is six years. CPLR § 213(1). This would permit the Trustee to reach back to October 3, 1995, six years before the Debtor's bankruptcy petition was filed. See *Glosser v. S & T Bank (In re Ambulatory Medical & Surgical Health Care)*, 187 B.R. 888, 901 (Bankr.D.Pa.1995) ("As long as the applicable statute of limitation has not expired prior to the filing of the bankruptcy petition, the trustee may bring an avoidance action under the powers bestowed upon him by § 544(b) ...."); *In re Topcor, Inc.*, 132 B.R. 119, 124 (Bankr.D.Tex.1991); 4 L. King et al., *Collier on Bankruptcy*, ¶ 544.03[2] (15th ed.1989).

The Victor Defendants' principal arguments are (a) that the Trustee cannot reach payments made prior to October 4, 1998 by virtue of a special three-year limitations period contained in the LLCL and (b) that all of the Trustee's claims are barred by an alleged "safe harbor" for distributions also included in the LLCL.

### (a) The New York LLCL Three-Year Limitations Period

■ Section 508(c) of the LLCL provides that a "member who receives a wrongful distribution from a limited liability company shall have no liability under this article *or other applicable law* for the amount of the distribution after the expiration of three years from the date of the distribution." (emphasis added). On its face, this provision appears to provide a special limitations or look-back period for any State-based action to recover a "wrongful distribution" pursuant to § 544(b), whether under the LLCL or other State law. Although "wrongful" is not defined in the LLCL, the Court can rely on the common understanding of the term. See *Reves v. Ernst & Young*, 494 U.S. 56, 77, 110 S.Ct. 945, 108 L.Ed.2d 47 (1990). Wrongful is a broad term and the common understanding of the term would include distributions that could be recovered as either constructive or intentional fraudulent conveyances under the DCL, or as distributions based on an alleged breach of an LLC operating agreement.

If there were doubt as to the scope of the word "wrongful" as used in § 508(c) of the LLCL, the intent of the New York Legislature to impose a blanket three-year limitations period on a member's State law liability for the receipt of a distribution, and to override longer State limitations periods, is made clear by the remainder of § 508. Section 508(a) itself contains a ban on the payment of certain distributions by an LLC. It provides:

A limited liability company shall not make a distribution to a member to the extent that, at the time of the distribution, after giving effect to the distribution, all liabilities of the limited liability company, other than liabilities to members on account of their membership interests and liabilities for which recourse of creditors is limited to specified property of the limited liability company, exceed the fair market value of the assets of the limited liability company . . . ."

Section 508(b) then goes on to spell out certain further principles. It provides: "A member who receives a distribution in violation of subdivision (a) of this section, and who knew at the time of distribution that the distribution violated subdivision (a) of this section shall be liable to the limited liability company for the amount of the distribution." Section 508(b) then provides that a member who was unaware that the distribution was in violation of 508(a) will not be liable for the distribution.

Section 508(b), however, does not stop there; it continues: "Subject to subdivision (c) of this section, this subdivision shall not affect any obligation or liability of a member under the operating agreement or other applicable law for the amount of a distribution." Thus, § 508(b) contains a savings clause, making it clear that §§ 508(a) and (b) do not override liability under the operating agreement or other "applicable law"—but it provides that the savings clause is expressly subject to the three-year limitations period in § 508(c). Accordingly, it was the intent of the New York Legislature that claims under the DCL and contractual claims for the recovery of distributions be preserved, but only as limited by § 508(c). See also,

16 John Blyth, et al., *NY Jur. Business Relationships* § 2129 ("Subject to the time limitations on a member's liability for a wrongful distribution, the Limited Liability Company Law provisions regulating the obligations of a member for receipt of wrongful distributions does not affect any obligation or liability of a member under the operating agreement or other applicable law for the amount of the distribution."); 1 Karon S. Walker, *N.Y. Practice Series–Limited Liab. Co. & Partnerships: A Guide to Law and Practice* § 7:11 ("A member who knowingly receives a wrongful distribution is not liable to the LLC or to creditors after three years from the date of distribution.").[5]

▉ Moreover, § 508(c) also provides that a member's liability for the "amount of the distribution" is limited to the three years. This language implies that members are generally shielded not only for the distributions but for the amounts received. If this Court were to construe § 508(c) to apply only to actions seeking the return of a distribution pursuant to § 508, it would not be giving any effect to the word "amount." This would violate the principle that a statute is to be construes to give effect to each of its words. See *Duncan v. Walker*, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001).

Based on the foregoing, the Court finds that the applicable look-back or limitations period for the Trustee's first, third, fourth and fifth counts, to the extent they seek the avoidance or return of distributions under State law, is three years.[6]

**(b) The Effect of § 506 of the New York LLCL**

▉ The Victor Defendants further argue that § 506 of the LLCL shields them entirely from liability under the DCL. Section 506 provides:

Subject to sections five hundred eight and seven hundred four of this chapter, at the time a member becomes entitled to receive a distribution, such member has the status of, and is entitled to all remedies available to, a creditor of the limited liability company with respect to the distribution.

The Victor Defendants argue that § 506 eliminates fraudulent conveyance liability because it provides that a member who receives a distribution has the status of a creditor and therefore takes for fair consideration.

These defendants overstate the plain effect of § 506. That statute is itself made subject to § 508 of the LLCL, and, as discussed above, § 508(b) has a savings clause that (subject to a three-year limitations or look-back period) preserves liability under "other applicable law." That is the short answer to the Victor Defendants' argument.

▉ In any event, § 506 of the LLCL only gives a member who becomes "entitled to receive a distribution" the status of and remedies available to a creditor. This means that in the event of a liquidation of the LLC, the member would, *prima facie*, be able to share in any distribution of assets as a creditor. This mitigates the possibility that a member would have tax liability for the income of the LLC, but

---

**5.** There appear to be no reported cases on point. The Delaware Chancery Court held in *Pepsi–Cola Bottling Co. of Salisbury Md. v. Handy*, 2000 Del. Ch. LEXIS 52 at *16 (2000) that 6 Del. C. § 18–607(a), which is nearly identical to § 508, "prohibits the stripping of corporate assets so as to render an LLC insolvent, and creates a corporate cause of action against LLC members who improperly receive a distribution of those assets." The Court in *Handy* went on to say that § 18–607

was not intended to be the exclusive statutory remedy for receipt of a wrongful distribution, but it did not have occasion to consider the limitations issue.

**6.** There is no conflict with Federal law, as the look-back period applicable to actions under § 548 of the Bankruptcy Code is only one year.

would otherwise be treated as an equity holder and be subordinated to creditors in sharing in the assets of the company. Nevertheless the Victor Defendants cannot use this provision to elevate their position to a creditor taking for fair value. Section 506 does purport to give a distributee the status of a creditor who took for value. It does not override, for example, § 273 of the NYDCL, which provides, "*Every conveyance made* and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without fair consideration." (emphasis added). It does not by its terms even apply to a member who has received a distribution. It is not an independent defense to the Trustee's claims.

### 5. The Claims against Victor for Violation of Fiduciary Duty

Finally, the Victor Defendants assert that the Trustee has not adequately alleged that Victor breached a fiduciary duty to the Debtor.[7] They make two arguments: first, that Victor did not breach a fiduciary duty because the Debtor was not insolvent at the time of the transfers, made insolvent by the transfers or in the zone of insolvency at the time of the transfers. This argument fails because, as discussed above, the Court cannot, on the pleadings, determine whether the Debtor was insolvent or in the zone of insolvency at the time of the distributions.

▇▇▇ The Victor Defendants next ask the Court to find as a matter of law that Victor was not an insider, as defined by the Bankruptcy Code, and as such was not a fiduciary of the Debtor. The Victor Defendants argue that PSP was in any event a minority member of the Debtor, and that Victor could not have been in control of the Debtor or within the Bankruptcy Code's definition of "insider."

▇▇▇ The Court cannot determine, at this stage of the case, the factual issues regarding the extent to which Victor or PSP was in control of the Debtor (if at all) and the extent of any fiduciary duty Victor may have had. Under New York law, "[u]nless the articles of organization provides for management of the limited liability company by a manager . . . management of the limited liability company shall be vested in its members," and any such members "exercising such management powers or responsibilities shall be deemed to be a manager for purposes of applying the provisions of this chapter . . . and any such member shall have and be subject to all of the duties and liabilities of a manager provided in this chapter." LLCL § 401. The LLCL further provides that a "manager shall perform his or her duties as a manager . . . in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances." LLCL § 409. This "is the same fiduciary standard applied to corporate directors." 16 *N.Y. Jur. Business Relationships* § 2107. Thus, absent any language in the Organization Agreement to the contrary, and none is alluded to, the Victor Defendants had the right to manage and control the Debtor and therefore were in a *prima facie* fiduciary relationship with the Debtor.

▇▇▇ Moreover, these defendants are properly characterized as insiders of the Debtor. Although the Bankruptcy Code was drafted without consideration of entities such as LLCs, the Code's definition of "insider" is sufficient to cover the Victor Defendants, at least for purposes of this motion to dismiss. Section 101(31) of the Bankruptcy Code defines "insider" as including a person in control of a corporation or a partnership, as well as a corporate director and general partner of a

---

7. Count two of the Complaint is brought only against Victor personally.

partnership. Courts uniformly treat this definition of "insider" as illustrative of types of insider relationships but not as exclusive, and instead refer to the definition of insider contained in the legislative history: "one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor." *Pan Am Corp. v. Delta Air Lines*, 175 B.R. 438, 499 (S.D.N.Y.1994) (collecting cases). Section 101(31) of the Bankruptcy Code is concerned with a person's ability to exert influence over a debtor so as to gain a more favorable position. See, *e.g.*, *In re F & S Central Mfg.*, 53 B.R. 842, 848 (Bankr.E.D.N.Y.1985). "[C]ontemporary insider analysis invites the Court to consider whether the disputed relationship is similar to or bears characteristics of any of the relationships specified in the statute." *In re Gilbert*, 104 B.R. 206, 210 (Bankr.D.Mo.1989).

As stated above, the LLCL presumptively puts members in control of the LLC, and as such they are in a position to exert influence over the LLC. This sufficiently places them within the parameters of the Bankruptcy Code's definition of insider. See *Solomon v. Barman (In re Barman)*, 237 B.R. 342, 348 (Bankr.E.D.Mich.1999) (no dispute that members of an LLC were insiders).

As insiders, the Victor Defendants at least had a *prima facie* fiduciary duty. See LLCL § 409. At a later stage of the case they may be able to show lack of control or any management responsibility, or other defenses to the second Count, but the Court cannot dismiss Count Two of the complaint on the instant motion to dismiss.

### CONCLUSION

As stated above, Counts One, Three, Four, and Five are dismissed insofar as they seek to avoid transfers made prior to October 3, 1998. Also, Counts One, Three, Four and Five are dismissed insofar as they seek to pierce the corporate veil between Victor and PSP. The Victor Defendants' motion to dismiss is otherwise denied. The Trustee may amend the complaint in accordance with this decision and shall settle an appropriate order on five days' notice.