ILANA DIAMOND ROVNER, Circuit Judge.
 

 After a trial, the bankruptcy court (the Hon. Robert D. Martin) denied Robert P. Krehl a discharge of his extensive personal debts pursuant to 11 U.S.C. § 727(a). The court found that a denial of discharge was warranted because Krehl had removed, concealed, and transferred property belonging to the bankruptcy estate of Retro Technologies, Inc. (“RTI”) with the intent to hinder, delay or defraud RTI’s creditors.
 
 See
 
 11 U.S.C. § 727(a)(2)(B). The court also found that Krehl had entered RTI’s premises after a receiver had been appointed, disarmed the alarm system, dismantled the company’s computer program, and made away with corporate records and financial information.
 
 See
 
 11 U.S.C. § 727(a)(3). The court concluded that because Krehl had committed these acts in connection with the bankruptcy of an “insider,” he should be denied a discharge in his own bankruptcy.
 
 See
 
 11 U.S.C. § 727(a)(7). Krehl appealed that decision to the district court, which affirmed the bankruptcy court’s judgment. He now appeals to this court, arguing,
 
 inter alia,
 
 that the lower courts erred in finding that the insider relationship survived his resignation as a corporate officer and director. He contends that a denial of discharge was not warranted here because he no longer was an insider by the time most of the objectionable conduct occurred. We disagree, however, and thus affirm the judgment below.
 

 I.
 

 After two days of testimony, the bankruptcy court made preliminary oral findings and subsequently issued detailed findings of fact and conclusions of law. Krehl testified at the trial and offered innocent explanations for nearly all of his actions. The bankruptcy court did not credit his explanations, however, but found his testimony incredible on all material issues. We describe the factual background of this case with an eye toward that finding.
 

 Prior to January 3, 1994, Krehl was the president, sole shareholder, and a director of RTI, a company that manufactured and applied synthetic stucco and insulation products. RTI operated out of a building that Krehl owned on Raemisch Road in Waunak-ee, Wisconsin. The Village of Waunakee (the “Village”) is one of Krehl’s creditors, as Krehl personally executed a $54,558 note in its favor in November 1989. The Village also holds a $490,000 note executed by RTI in March 1993. Krehl personally guarantied that corporate obligation.
 

 RTI filed a voluntary petition under Chapter 11 of the Bankruptcy Code on October 4, 1993. The corporation was then in default on a loan from its primary lender, Bank One-Beaver Dam. After the bank filed a replevin action in Wisconsin state court, RTI sought to reorganize under the protection of the bankruptcy laws. The corporation ceased doing business, however, on December 31, 1993, and its Chapter 11 proceeding was subsequently converted into a Chapter 7. On January 3, 1994, Krehl resigned as president and a director of RTI, although he remained the company’s sole shareholder. Shortly thereafter, David Eisenga, a Bank One vice president, was appointed as the corporation’s receiver.
 

 Krehl initiated this personal bankruptcy proceeding on January 18,1994. The Village subsequently filed an adversary complaint, objecting to a discharge of Krehl’s debts under 11 U.S.C. § 727(a)(2)(B) & (a)(7). Af
 
 *740
 
 ter a trial on that claim, the Village sought to amend its complaint to conform to the proof at trial by adding an objection to discharge under 11 U.S.C. § 727(a)(3) & (a)(7). The bankruptcy court allowed the amendment and found that the Village had established violations of each of the cited paragraphs.
 
 [1]
 

 The court found that Krehl, as an insider of RTI, had violated section 727(a)(2)(B) in a number of ways. First, after RTI filed its chapter 11 petition but while the company was still operating, Krehl and an accomplice loaded four semi-trailers with raw materials, inventory, equipment, and records belonging to RTI and moved the trailers to a location on Hanson Road in Madison, Wisconsin. Neither the court presiding over RTI’s bankruptcy nor any of RTI’s creditors had knowledge of or consented to the removal of this property.
 

 The other section 727(a)(2)(B) violations all relate to Retro Tek I, Inc. (“RTI I”), a company incorporated in the State of Wisconsin on January 4, 1994. RTI I purported to operate a business similar to that of RTI, and it initially was located at the same Raem-isch Road location in Waunakee as RTI. After January 8, 1994, however, RTI I moved its corporate headquarters to Krehl’s personal residence in Madison. Although RTI I was incorporated by Steven Arwady, the bankruptcy court found that Krehl controlled that corporation and directed its actions at all material times. On December 31, 1993, for example, Krehl caused RTI I to purchase certain property from RTI, including equipment, supplies, raw materials, trailers, orders, checks, and check proceeds. RTI sold this property without the prior approval of the court presiding over its bankruptcy or of the corporation’s creditors. The bankruptcy court found that the purported sale was not in the ordinary course of RTI’s business and that it was not a sale at all, but merely a way of “papering over [a] transfer of assets.” (Dec. 9,1994 Tr. at 90.)
 

 Subsequent to the purported asset sale, Krehl received more than $8,000 in checks from RTI customers for work performed or materials supplied by RTI prior to December 31, 1993. Krehl endorsed the checks in the name of RTI I and had them deposited into that corporation’s account. Krehl also directed RTI I to fill orders accepted but not yet filled by RTI when that corporation closed its doors on December 31. Although RTI I retained all proceeds from these orders, it did not purchase the orders or otherwise compensate RTI. In filling the orders, moreover, RTI I used materials, supplies, and equipment owned by RTI’s bankruptcy estate.
 

 The bankruptcy court also found that' Krehl had attempted to divert to the successor corporation materials previously ordered and paid for by RTI. In December 1993, RTI paid $6,000 for materials on order from Ropek Central, Inc. (“Ropek”). Ropek was subsequently told to redesignate the purchaser of those materials as RTI I, and Ropek issued an invoice to that effect. The invoice showed that the materials were to be delivered to the same Hanson Road location in Madison where Krehl had parked the four semi-trailers. After a Ropek driver was unable to find the Hanson Road location, however, and spoke to the receiver at RTI’s
 
 *741
 
 Waunakee headquarters, Krehl apparently redirected the delivery to RTI.
 

 The bankruptcy court found that Krehl also had violated section 727(a)(3) by breaking into RTI’s building after the receiver’s appointment, disarming the alarm system, and then removing records and other materials belonging to RTI’s estate. The court found that while in the building, Krehl also had downloaded information from RTFs computers and dismantled the computer program to prevent further access. Although the Village had not alleged a section 727(a)(3) violation in its adversary complaint, the bankruptcy court permitted the Village to amend its pleading to conform to the proof at trial. The court then relied on this violation as an additional basis for denying Krehl’s discharge.
 

 II.
 

 Krehl’s primary argument on appeal is that he no longer was an insider once he resigned as president and a director of RTI on January 3, 1994, and once Eisenga was appointed as receiver and locked him out of RTFs premises on January 13. Under Krehl’s view, then, much of the objectionable conduct occurred after the insider relationship had ended, rendering section 727(a)(7) inapplicable to that conduct. Although Krehl concedes that he was an insider when the four semi-trailers were moved to Madison, and when RTI purported to sell a substantial portion of its assets to RTI I on December 31, 1993, he nonetheless argues that the judgment below cannot stand because it was derived from the erroneous conclusion that he remained an insider at all material times.
 

 A.
 

 Section 727(a)(7) authorizes a denial of discharge in the debtor’s personal bankruptcy if the debtor committed any act specified in paragraph (a)(2) through (a)(6) of that seetion in connection with another bankruptcy case “concerning an insider.” 11 U.S.C. § 727(a)(7). Because of the profound personal implications of a violation, section 727(a)(7) should have the effect, according to Collier, of “inducting] the cooperation of individuals in related bankruptcy eases.” 4
 
 Collier on Bankruptcy
 
 para. 727.10, at 727-85 (15 ed. 1995). The provision thereby serves to protect the integrity of the system as a whole by defeating the discharge of those who are shown to have engaged in improper conduct in an earlier, related case.
 
 See In re Weber,
 
 99 B.R. 1001, 1015 (Bankr.D.Utah 1989). But section 727(a)(7) applies only if the debtor in the earlier case was an insider of the present debtor when the relevant conduct occurred.
 
 [2]
 

 The term “insider” under the Bankruptcy Code is defined at 11 U.S.C. § 101(31). Because the debtor here is an individual, the term “includes” a:
 

 (i) relative of the debtor or of a general partner of the debtor;
 

 (ii) partnership in which the debtor is a general partner;
 

 (iii) general partner of the debtor; or
 

 (iv)
 
 corporation of which the debtor is a director, officer, or person in control.
 

 11 U.S.C. § 101(31) (emphasis added). By virtue of the nonlimiting term “includes,” the above definition is intended to be illustrative rather than exhaustive. See 11 U.S.C. § 102(3);
 
 In re Schuman,
 
 81 B.R. 583, 586 (9th Cir. BAP 1987);
 
 In re Newcomb,
 
 744 F.2d 621, 625 n. 4 (8th Cir.1984). Legislative history suggests that, in addition to the individuals and entities actually named, the term also encompasses anyone with “a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arm’s length with the debtor.” S. Rep. No. 989, 95th Cong.2d Sess.,
 
 reprinted in
 
 1978 U.S.C.C.A.N. 5787,
 
 *742
 
 5810. In ascertaining insider status, then, courts have looked to the closeness of the relationship between the parties and to whether any transactions between them were conducted at arm’s length.
 
 See, e.g., In re Holloway,
 
 955 F.2d 1008, 1011 (5th Cir.1992);
 
 In re Schuman,
 
 81 B.R. at 586.
 

 The standard of review to be applied to a bankruptcy judge’s finding on insider status has been the subject of some debate. The Fifth Circuit originally considered the insider question to be one of fact that would be reviewed only for clear error.
 
 See In re Missionary Baptist Found. of Am.,
 
 712 F.2d 206, 209-10 (5th Cir.1983). A later panel of the same court intimated, however, that the question could be viewed as one of law once the underlying facts were established — in other words, a mixed question of law and fact.
 
 See In re Holloway,
 
 955 F.2d at 1014. A Bankruptcy Appellate Panel of the Ninth Circuit came to the same conclusion
 
 (see In re Schuman,
 
 81 B.R. at 586 n. 1), and we are inclined to agree. The question under section 101(31) is whether the historical facts found by the bankruptcy court meet the Code’s open-ended definition of an insider. We think that question is properly characterized as a mixed question of law and fact.
 
 See Pullman-Standard v. Swint,
 
 456 U.S. 273, 290 n. 19, 102 S.Ct. 1781, 1791 n. 19, 72 L.Ed.2d 66 (1982);
 
 see also Ornelas v. United States,
 
 — U.S. - - -, 116 S.Ct. 1657, 1662, 134 L.Ed.2d 911 (1996). This circuit has embraced the notion that “appellate review of determinations of mixed questions of fact and law should be governed by the standard of clear error, and not by the de novo standard”
 
 (United States v. Baldwin,
 
 60 F.3d 363, 365 (7th Cir.1995)), but that broad pronouncement was recently undercut by the Supreme Court’s decision in
 
 Ornelas,
 
 where the Court determined that reviewing courts must consider de novo the mixed question of whether probable cause or reasonable suspicion exists to support a warrantless search under the Fourth Amendment. - U.S. at -, 116 S.Ct. at 1662-63. Indeed, after issuing
 
 Ornelas,
 
 the Supreme Court vacated our
 
 Baldwin
 
 decision and remanded that case for further consideration in light of
 
 Ornelas. See Baldwin v. United States,
 
 — U.S. -, 116 S.Ct. 1873, 135 L.Ed.2d 169 (1996). Ultimately, however, we need not determine whether de novo or more deferential review is appropriate here because the bankruptcy court’s conclusion survives scrutiny under either standard.
 

 B.
 

 Because Krehl was then the president, a director, and the individual in absolute control of RTI, there can be no doubt that the corporation was an insider of Krehl under section 101(31) at the time it filed a petition in bankruptcy and Krehl then loaded RTI property and records into the four semitrailers and whisked them away to Madison.
 
 [3]
 
 The district court observed that this incident alone would be sufficient to deny Krehl a discharge under section 727(a)(2)(B) & (a)(7), and we are inclined to agree. Yet we need not base our holding only on the semitrailer incident, as we agree with the lower courts that in the circumstances of this case, the insider relationship survived Krehl’s resignation and the subsequent appointment of a receiver.
 

 Prior to his resignation, Krehl was for all intents and purposes the corporate entity itself. He was RTI’s president, the owner of all of its stock, and a director on its board. Krehl also managed RTI’s day-to-day operations and established its corporate policies. He knew everything about the corporation that there possibly was to know. In the corporation’s bankruptcy, then, Krehl was the consummate insider.
 
 See, e.g., In re Adams,
 
 31 F.3d 389, 394 n. 2 (6th Cir.1994),
 
 cert. denied,
 
 — U.S. -, 115 S.Ct. 903, 130 L.Ed.2d 786 (1995);
 
 Stoumbos v. Kilimnik,
 
 988 F.2d 949, 959 (9th Cir.),
 
 cert. denied,
 
 — U.S. -, 114 S.Ct. 190, 126 L.Ed.2d 148 (1993);
 
 In re Int’l Club Enter., Inc.,
 
 109 B.R. 562, 565 (Bankr.D.R.I.1990);
 
 In re Powell,
 
 88 B.R. 114, 117 (Bankr.W.D.Tex.1988);
 
 In re Dan-Ver Enter., Inc.,
 
 86 B.R. 443, 449 (Bankr.W.D.Pa.1988).
 

 
 *743
 
 We do not believe that in the circumstances of this case Krehl could eviscerate his historically close relationship with RTI simply by resigning as an officer and director once the corporation’s chapter 11 bankruptcy was converted into a chapter 7. Even after Krehl submitted his resignation, and even after the appointment of a receiver, RTI still belonged to Krehl, as he was sole owner of the corporation’s stock. Their longstanding relationship also provided Krehl the information he needed to divert RTFs receivable accounts to a successor corporation, to enable that successor to fill orders previously accepted by RTI, and to attempt to divert to the successor materials ordered and paid for by RTI. It is unlikely that an outsider would have been able to accomplish any or all of these things. Access to inside information can be sufficient to confer insider status even where there is no legal right or ability to exercise control over a corporate entity.
 
 See In re Papercraft Corp.,
 
 187 B.R. 486, 496 (Bankr.W.D.Pa.1995);
 
 In re Locke Mill Partners,
 
 178 B.R. 697, 702 (Bankr.M.D.N.C.1995) (“For purposes of deciding whether an entity is an insider of the debtor it is not necessary that the debtor have actual control in the sense of legal decision making power.”);
 
 In re Allegheny Int’l, Inc.,
 
 118 B.R. 282, 298 (Bankr.W.D.Pa.1990) (partnership with unique access to information deemed an insider even where it had no actual control or legal decision making power). We have no doubt that it was sufficient to do so here, for in the bankruptcy court’s words, even after his resignation, Krehl remained “the only one who knew what was going on_” (Dec. 9, 1994 Tr. at 88.)
 

 Section 727(a)(7) would become toothless, moreover, if insider status could automatically be shed through the largely ministerial act of resignation. We believe that when a control person resigns in this way, a court should look to all of the circumstances to determine whether the relationship between the individual and the corporate entity remains so close that the two could not be said to be dealing at arms length. The bankruptcy court did so here and properly concluded that RTI must be considered an insider in connection with Krehl’s personal bankruptcy despite Krehl’s resignation and the subsequent appointment of a receiver.
 
 Cf. In re Allegheny Int’l, Inc.,
 
 158 B.R. 332, 339 (Bankr.W.D.Pa.1992) (insider cannot avoid that status for purposes of 11 U.S.C. § 502(b)(4) by resigning immediately before the debtor files its petition);
 
 In re Trans Air, Inc.,
 
 103 B.R. 322, 324 (Bankr.S.D.Fla.1988) (“where a director remains in a position to exert considerable influence over the affairs of the debtor corporation, even though the corporation has been sold to a new entity, a bankruptcy court may find that the insider status has not been cured.”),
 
 aff'd,
 
 104 B.R. 477 (S.D.Fla.1989).
 

 III.
 

 Krehl next argues that even if the lower court’s insider conclusion was correct, the Village failed to demonstrate that he acted with the requisite “intent to hinder, delay, or defraud” RTI’s creditors.
 
 See
 
 11 U.S.C. § 727(a)(2). The bankruptcy court found that Krehl had acted with the actual and specific intent to defraud, remarking, in fact, that the intention of the debtor was “beyond question” and that the court could recall no case “in which it was any more clear that the [debtor] had acted in a way [that] would make denial of discharge necessary.” (Dec. 9, 1994 Tr. at 85.) The court’s finding as to the debtor’s intent under section 727(a)(2) is one of fact that we review only for clear error.
 
 In re Smiley,
 
 864 F.2d 562, 566 (7th Cir.1989);
 
 see also In re Miller,
 
 39 F.3d 301, 307 (11th Cir.1994).
 

 Before a debtor may be denied a discharge under section 727(a)(2), he must be found to have acted with the actual intent to defraud, hinder, or delay creditors.
 
 In re Smiley,
 
 864 F.2d at 566;
 
 see also In re Wines,
 
 997 F.2d 852, 856 (11th Cir.1993). Because direct evidence of a debtor’s intent usually will be unavailable, it may be inferred from the circumstances surrounding his objectionable conduct.
 
 In re Smiley,
 
 864 F.2d at 566;
 
 see also In re Devers,
 
 759 F.2d 751, 753 (9th Cir.1985). The intent determination often will depend upon a bankruptcy court’s assessment of the debtor’s credibility, making deference to the court’s finding particularly appropriate.
 
 In re Burgess,
 
 955 F.2d
 
 *744
 
 134, 137 (1st Cir.1992);
 
 see also In re Bonnett,
 
 895 F.2d 1155, 1157 (7th Cir.1989). Thus, where the evidence on the intent question is such that two permissible conclusions may rationally be drawn, the bankruptcy court’s choice between them will not be viewed as clearly erroneous.
 
 In re Bonnett,
 
 895 F.2d at 1157.
 

 The evidence below amply supports the bankruptcy court’s finding that Krehl acted with the actual intent to hinder, delay, or defraud RTI’s creditors. Although Krehl offered explanations at trial for each of his objectionable acts, his testimony was flatly contradicted by other witnesses in the case. In finding that Krehl acted with the actual intent to hinder, delay, or defraud the corporation’s creditors, the bankruptcy court found Krehl’s testimony incredible to the extent it was contradicted by that of any other witness. Krehl’s demeanor on the stand, according to the court, was that of “a person who was not being fully forthcoming and truthful.” (Dec. 9, 1994 TV. at 88.) Krehl has provided us with no basis for doubting the bankruptcy court’s assessment of his credibility, and thus no basis for disturbing that court’s finding on Krehl’s intent.
 
 See, e.g., In re Adams,
 
 31 F.3d at 394.
 
 [4]
 

 IV.
 

 The bankruptcy court also found that a denial of discharge was warranted under paragraphs (a)(3) and (a)(7) of 11 U.S.C. § 727 because Krehl had “concealed,, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information” from which RTI’s financial condition or business transactions might be ascertained. Krehl committed this violation, the court found, when he broke into RTI’s premises, disarmed the alarm system, dismantled RTI’s computer program, and made away with company records and other materials. Krehl raises a procedural rather than a substantive objection to the court’s finding under section 727(a)(3). The Village failed to allege a violation of this paragraph in its complaint, and Krehl argues that the bankruptcy court should not have permitted a belated amendment to that pleading to conform to the trial evidence. Krehl contends that the amendment was improper because he did not expressly or impliedly consent to a trial on that issue.
 
 See
 
 Bankr.R. 7015 (Fed.R.Civ.P. 15 applies in adversary proceedings);
 
 In re Prescott,
 
 805 F.2d 719, 724-25 (7th Cir.1986).
 

 We need not resolve Krehl’s procedural objection, however, because it would not affect the validity of the underlying judgment denying him a discharge. As the Fourth Circuit recently observed:
 

 A party objecting to discharge need prove only one of the grounds for non-discharge-ability under § 727(a) because the provisions of § 727(a) are phrased in the disjunctive. Proof of conduct satisfying any one of the sub-sections is enough to justify a denial of a debtor’s request for a discharge.
 

 Farouki v. Emirates Bank Int’l, Ltd.,
 
 14 F.3d 244, 250 (4th Cir.1994);
 
 see also In re Reed,
 
 700 F.2d 986, 989 (5th Cir.1983). When a denial of discharge is premised on acts committed by the debtor in connection with the bankruptcy of an insider under section 727(a)(7), the debtor’s violation of any one of the listed paragraphs is similarly sufficient. 11 U.S.C. § 727(a)(7). Because we already have injected Krehl’s challenge to a denial of discharge under paragraph (a)(2)(B), and it is clear that the additional violation of paragraph (a)(3) provides only an alternative ground for a denial of discharge, we need not consider whether Krehl impliedly consented to a trial of that issue.
 
 See Farouki,
 
 14 F.3d at 251.
 

 V.
 

 Krehl mounts various other attacks against the bankruptcy court’s judgment — his brief, in fact, raises eighteen issues for review. We have considered those additional arguments and reject them without further discussion. For the reasons we have stated, the district court’s judgment, which affirmed the final
 
 *745
 
 judgment of the bankruptcy court denying Robert Krehl a discharge, is
 

 AFFIRMED.
 

 [1]
 

 . The portions of section 727(a) that are pertinent here provide as follows:
 

 (a) The court shall grant the debtor a discharge unless—
 

 [[Image here]]
 

 (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
 

 [[Image here]]
 

 (B) property of the estate, after the date of the filing of the petition;
 

 (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;
 

 [[Image here]]
 

 (7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider....
 

 [2]
 

 . The bankruptcy court and the district court framed the issue in terms of whether Krehl should be considered an insider of RTI. Yet because Krehl is the debtor in the present case, the proper inquiry under section 727(a)(7) is whether RTI is an insider of Krehl. See
 
 In re Adams,
 
 31 F.3d 389, 394 n. 2 (6th Cir.1994),
 
 cert. denied, -
 
 U.S. -, 115 S.Ct. 903, 130 L.Ed.2d 786 (1995);
 
 In re Nicsinger,
 
 136 B.R. 228, 233 (Bankr.W.D.Mo.1992);
 
 In re Weber,
 
 99 B.R. at 1015;
 
 In re Powell,
 
 88 B.R. 114, 117 (Bankr.W.D.Tex.1988). That distinction, however, has no effect on the legitimacy of the bankruptcy court’s conclusion about insider status in this case.
 
 Compare
 
 11 U.S.C. § 101 (31 )(A)(iv) with 11 U.S.C. § 101(31)(B)(i), (ii), & (iii).
 

 [3]
 

 . Krehl also had not yet resigned on December 31, 1993, when he caused RTI to transfer a substantial portion of its assets to RTI I.
 

 [4]
 

 . Krehl also argues that a denial of discharge was unwarranted because his conduct did not actually harm the interests of RTI’s creditors. Yet so long as the debtor acted with the requisite intent under section 727(a)(2), his discharge may be denied even if creditors did not suffer any harm.
 
 In re Smiley,
 
 864 F.2d at 569;
 
 see also In re Adeeb,
 
 787 F.2d 1339, 1343 (9th Cir.1986).