In re Pamela CHADWICK, Debtor.

Diane Damon, Plaintiff–Appellant,

v.

Pamela Chadwick, Defendant–Appellee.

No. 05 C 592 S.

United States District Court,
W.D. Wisconsin.

Dec. 13, 2005.

§ 158(a). The following facts are undisputed.

## BACKGROUND

On June 7, 2004 defendant filed a voluntary bankruptcy petition for relief under Chapter Seven of Title 11 of the United States Code. Plaintiff was a creditor of defendant and on November 9, 2004 she filed an adversary complaint objecting to defendant's request for a bankruptcy discharge pursuant to the provisions of 11 U.S.C. § 727(a)(2)–(6).

On July 15, 2005 during the course of the adversary proceeding the bankruptcy court held a trial to determine whether defendant violated any provision of 11 U.S.C. § 727 which would prevent her discharge.

Three witnesses testified at the proceeding. Plaintiff and defendant both testified as well as defendant's daughter Shannon Hitchcock. Plaintiff testified she worked with defendant (who is a realtor) in 2001 as a buyer/broker assistant and she did some consulting work for her as well. She testified defendant told her she needed money so she loaned her $34,500.00 with the understanding that defendant would pay the loan back within three months.

Plaintiff testified that between 2001 and 2003 defendant repaid a portion of the loan. For example, on one occasion defendant gave her about $8,000.00 from one of her commissions. However, in 2003 plaintiff testified she became aware of defendant's financial problems. For example, defendant sold her home on Bascom Street in Madison, Wisconsin for $585,000.00. When defendant bought the property initially the purchase price was $226,500.00. Plaintiff testified she asked defendant what happened to the proceeds from the sale of the property because they were to be used to repay the loan. Defendant told her she did not receive any proceeds from

Joel Bruce Winnig, Attorney at Law, Madison, WI, for Defendant–Appellee.

## ORDER

SHABAZ, District Judge.

Plaintiff-appellant Diane Damon (hereinafter plaintiff) appeals from an order of the bankruptcy court dismissing her adversary complaint. Plaintiff sought to prevent discharge of a debt owed to her by defendant-appellee Pamela Chadwick (hereinafter defendant) pursuant to the provisions of 11 U.S.C. § 727. In an adversary proceeding the bankruptcy court held a trial and upon completion of the evidence held plaintiff did not meet her burden to prove by a preponderance of the evidence that defendant violated any subsection of Section 727. Accordingly, the bankruptcy court granted defendant's discharge. Jurisdiction is based on 28 U.S.C.

the sale and she even had to get one of the mortgage holders to agree to a short sale just so she could get the property sold. Plaintiff testified she had no reason to doubt defendant and she believed her statement.

When defendant filed for bankruptcy in 2004 plaintiff testified she wondered where all of her money went so she attended a Section 341 meeting of creditors to determine what was happening in the proceeding. She testified she received very few answers at the hearing and she was never able to determine what happened to all of defendant's money. However, she also testified she was not aware of any money defendant disposed of that she failed to report on her bankruptcy schedules. She further testified defendant answered all of the questions plaintiff's attorney asked of her at the 2004 exam which was ordered by the bankruptcy court.

Defendant testified that in October 2003 she suffered a major stroke that affected the right side of her brain and in December 2003 she suffered another stroke that affected the left side of her brain. Altogether, defendant testified she suffered four strokes. She testified because of her strokes she still suffers from major memory loss. However, she also testified she is presently able to maintain her employment as a realtor. Additionally, defendant acknowledged there were discrepancies between the gross income listed on her bankruptcy schedule and the income listed on her tax forms. For example, on her bankruptcy schedule she listed her gross income for 2002 as $130,000.00. However, her 2002 1099 forms list her income as $148,000.00. Defendant testified when she filed her bankruptcy petition she tried to fill out all of her paperwork accurately and completely. She testified she attempted to list her income as accurately as she could on her bankruptcy schedules, she filed

amendments to clarify her estimated income and expenses and she did not intentionally hide any assets from her creditors.

Defendant further testified she provided all of her documents regarding her financial situation to her attorney. However, she testified she could not remember where all of her assets went. For example, her 2002 1099 forms list $15,824.00 in cash payments. Defendant testified she could not find any documents accounting for how or when she made those cash payments.

Defendant also testified concerning other items at issue in the proceeding. She testified regarding a 1997 Pontiac she failed to initially disclose as one of her assets. She testified she gave the car to her daughter Teri Chadwick and her daughter took the car to Texas with her because that was where she attended school. Defendant testified when she filed the amendment to her bankruptcy schedule concerning the automobile she thought her daughter junked the car for about $100.00. However, the evidence presented at trial demonstrated the car was sold for around $2,000.00.

Defendant also testified regarding the sale of another property she owned called "Woodcreek." She testified she received about $28,000.00 less from the sale of the property than she anticipated because of liens that were placed on the property. She testified she moved out of the "Woodcreek" property about five weeks after her last stroke and because of her medical condition she was not able to move herself so her daughter Shannon Hitchcock moved her belongings for her including boxes labeled with names of her real estate clients.

The evidence presented at trial demonstrated defendant filed a previous bankruptcy petition under Chapter 13 in 2002 that was later dismissed. However, defendant failed to disclose her previous bank-

ruptcy filing. She testified she had been through so much by the time she filed her current bankruptcy petition she did not remember her prior filing. She also testified she did not have any reason to hide her prior petition.

Finally, she testified regarding a bank account at Park Bank she failed to disclose on her bankruptcy schedule. Defendant testified she was joint-owner of the account with her daughter Shannon Hitchcock. She testified the source of funds for the account was probably commissions she received from April of 2004 and possibly some of her daughter's own funds. Additionally, she acknowledged there were wire transfers listed on statements from the Park Bank account that indicated during the months of March and April of 2004 a total sum of $7,218.00 was wired to her daughter Shannon Hitchcock and a total sum of $9,690.00 was wired to her other daughter Teri Chadwick.

The final witness at trial was defendant's daughter Shannon Hitchcock. She testified she began taking care of her mother after she suffered her strokes. She testified because she was taking care of some of her mother's business she needed to cash and deposit checks on her behalf so she opened the Park Bank account. Ms. Hitchcock further testified she handled the wire transfers to her sister in Texas because she needed money for school expenses and she also wired money to her own account to assist her with living expenses such as electric bills, gas, and her mortgage payments. However, Ms. Hitchcock acknowledged she did not receive a 1099 form for the work she handled on her mother's behalf.

Ms. Hitchcock also testified regarding her mother's health. She testified before her strokes her mother could multi-task and she had a very good memory. However, she testified after the strokes she had trouble focusing, multi-tasking and remembering things.

Upon completion of the evidence the bankruptcy court made several findings of fact and conclusions of law. The court began with a general statement regarding plaintiff's burden of proof:

> The denial of discharge is really quite a harsh penalty, and the history of the section is that while it's intended to deprive the dishonest debtor of the benefit of bankruptcy, it is not intended to make discharge unavailable to the debtors who are fundamentally honest. The burden on the plaintiff is very large. · The preponderance of the evidence must support findings that support the conclusion that one of the subsections of 727 has been violated.

The bankruptcy court proceeded to discuss each subsection of Section 727 at issue in the proceeding. First, the court discussed the subsection concerning whether property was transferred with an "intent to hinder, delay or deceive creditors." The court found there were some inconsistencies in reporting the transactions of the 1997 Pontiac. However, the Court found the property was diminutive and it held the treatment of the transaction was not conducted with any intent to hinder, delay or deceive creditors. The court further found the evidence did not suggest any vast amount of income was secreted. The court stated defendant should have been more responsive to requests for records and her responses could have been made in a more timely fashion. However, the court ultimately held defendant's delay was not driven by an intent to hinder creditors.

The bankruptcy court next discussed the subsection of Section 727 concerning false oaths. The court found defendant made mistakes in her schedules some of which were corrected by amendments. Howev-

er, the court found defendant did not know her statements were erroneous at the time she made the statements. Accordingly, the court held any erroneous statements made by defendant were not made with an awareness of their falsity which was required to find a false oath was involved.

The bankruptcy court proceeded to discuss Section 727(a)(3). The court stated:

> Under Section 727(a)(3) there is a question of an intentional concealment or destruction or falsification of records. Once again, the records probably should have been exchanged more timely and in a more responsive way, but I don't find that there was an intentional concealment or destruction here.

The court found some records were destroyed when defendant moved. However, the court also found the move was undertaken by people other than defendant and even though some of her records were lost many records remained. Further, the court found defendant provided comprehensive responses to the interrogatories and her responses were supported by direct references to the large amount of documents defendant supplied. Accordingly, the court held defendant did not violate Section 727(a)(3).

Finally, the bankruptcy court held defendant provided a satisfactory explanation for her loss of assets. The court found her explanation was imperfect. However, it also found defendant made a good faith effort to respond to discrepancies considering the limited function and memory she possessed after she suffered her strokes. Additionally, the court held plaintiff was not permitted to "play dumb" with regard to the explanations provided by defendant. It held plaintiff had to "take those explanations with the context in which they [were] offered and treat them not as something where you're trying to pick the most minute holes in the explanation, but to see if it's a plausible explanation that fits the facts generally stated." The court found defendant's explanation plausible. Accordingly, the bankruptcy court held plaintiff did not meet her burden to prove defendant violated any provision of Section 727 and it dismissed her complaint.

## MEMORANDUM

Plaintiff argues the bankruptcy court erred when it required her to prove intent under 11 U.S.C. § 727(a)(3) because intent is not an element of that subsection. Plaintiff further argues the bankruptcy court erred when it dismissed her adversary complaint and granted defendant's discharge because the evidence presented at trial was sufficient to prove by a preponderance of the evidence that defendant violated the provisions of Section 727(a)(2)-(6). Defendant argues the findings of fact made by the bankruptcy court were not clearly erroneous and those findings supported the bankruptcy court's conclusion that defendant was entitled to discharge. Accordingly, defendant argues plaintiff's appeal should be dismissed.

■ A district court reviews the legal interpretations of the bankruptcy court de novo. *In re Scott,* 172 F.3d 959, 966 (7th Cir.1999) (*citing In re Crosswhite,* 148 F.3d 879, 881 (7th Cir.1998)). However, findings of fact entered by the bankruptcy court are reviewed only for clear error. *Id.* Further, "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr.P. 8013.

■ Section 727(a) of the Bankruptcy Code provides that a Chapter Seven debtor is entitled to a discharge unless one of the eight specified conditions is met. *In re Juzwiak,* 89 F.3d 424, 427 (7th Cir.1996). Additionally, "consistent with the 'fresh start' policy underlying the Code, these

exceptions to discharge should be construed strictly against the creditor and liberally in favor of the debtor." *Id.* (citations omitted). Accordingly, the party objecting to discharge must establish grounds for the denial of discharge under 11 U.S.C. § 727(a) by a preponderance of the evidence. *Scott*, at 966–967. Plaintiff cannot meet this burden.

■ Under Section 727(a)(2) a creditor must prove four elements: (1) the act complained of was done "at a time subsequent to one year before the date" of filing the petition; (2) the act was done with "actual intent to hinder, delay, or defraud a creditor"; (3) the act was done by debtor or his or her duly authorized agent; and (4) the act consisted of transferring, removing, destroying or concealing any of debtor's property or debtor permitted any of those acts to be done. *Village of San Jose v. McWilliams*, 284 F.3d 785, 791 (7th Cir. 2002) (*citing In re Agnew*, 818 F.2d 1284, 1287 (7th Cir.1987)).

■ Direct evidence of a debtor's intent is usually unavailable. Accordingly, actual intent may be inferred from circumstances surrounding the objectionable conduct. *In re Krehl*, 86 F.3d 737, 743 (7th Cir.1996) (citations omitted). However, the intent determination often will depend upon a bankruptcy court's assessment of debtor's credibility which makes deference to the bankruptcy court's findings particularly appropriate. *Id.* Accordingly, the bankruptcy court's finding concerning debtor's intent under Section 727(a)(2) is a finding of fact reviewed only for clear error. *Id.* Further, where evidence on the intent question is such that two permissible conclusions may rationally be drawn the bankruptcy court's choice between them will not be viewed as clearly erroneous. *Id.* at 744 (*citing In re Bonnett*, 895 F.2d 1155, 1157 (7th Cir.1989)).

■ The evidence presented at trial amply supports the bankruptcy court's finding that defendant did not act with an actual intent to hinder, delay or defraud plaintiff. Defendant and her daughter Shannon Hitchcock offered testimony at trial that explained each of defendant's objectionable acts and their testimony was not contradicted by any other witness. The bankruptcy court found the evidence did not suggest defendant secreted any funds and it also found the evidence did not indicate defendant had any intention to hinder, delay, defraud or deceive her creditors. Plaintiff has not provided a basis for the Court to doubt the bankruptcy court's assessment of the witnesses' credibility. Accordingly, no basis exists to disturb the bankruptcy court's finding on defendant's intent. *Id.* at 744 (*citing In re Adams*, 31 F.3d 389, 394 (6th Cir.1994)).

■ Section 727(a)(3) provides that a debtor shall be granted a discharge unless the debtor fails to keep or preserve books and records from which the debtor's financial condition may be ascertained. 11 U.S.C. § 727(a)(3). The purpose of this subsection is to "make the privilege of discharge dependent on a true presentation of the debtor's financial affairs." *Scott*, at 969 (citations omitted).

■ Plaintiff argues the bankruptcy court erred because it made her prove intent to sustain her objection under Section 727(a)(3). Creditors do not need to prove a debtor intended to defraud them to demonstrate a Section 727(a)(3) violation. *Juzwiak*, at 430 (citations omitted). However, plaintiff misconstrues the bankruptcy court's finding.

When it articulated its findings of fact concerning Section 727(a)(3) the bankruptcy court stated "[u]nder Section 727(a)(3) there is a question of an intentional concealment or destruction or falsification of

records...I don't find that there was an intentional concealment or destruction here." This finding by the court does not support plaintiff's argument that the court required her to prove intent to sustain her objection under Section 727(a)(3). In the court's finding the word intentional modifies concealment which is evidenced by the disjunctive or following the word concealment. Concealment means the "withholding of something which one knows and which one, in duty, is bound to reveal," which includes "preventing discovery, fraudulently transferring or withholding knowledge or information required by law to be made known." *Scott,* at 967 (citations omitted). Accordingly, intent is an element of concealment. Therefore, the court did not require plaintiff to prove defendant intended to defraud her. It found plaintiff did not prove defendant concealed any records which is an element of Section 727(a)(3).

▮▮▮▮ Plaintiff also argues the evidence presented at trial supports the conclusion that defendant violated Section 727(a)(3). Section 727(a)(3) requires a debtor to produce records which provide creditors "with enough information to ascertain the debtor's financial condition and track [her] financial dealings with substantial completeness and accuracy for a reasonable period." *Juzwiak,* at 427 (citations omitted). Accordingly, creditors are not required to speculate regarding the financial history or condition of a debtor and they are not compelled to reconstruct a debtor's affairs. *Id.* at 428 (citations omitted). However, a debtor's records need not be kept in any special manner "nor is there any rigid standard of perfection in record-keeping mandated by § 727(a)(3)." *Id.* While the bankruptcy court found some of defendant's records were lost in a move it also found that move was undertaken by persons other than de-

fendant. This finding was supported by defendant's testimony. Additionally, it found a number of her records remained, her responses to interrogatories were comprehensive and her responses were supported by direct references to the large number of documents she supplied. The amount of defendant's financial records presented as exhibits in this case supports this finding. Accordingly, the court's finding that enough documents remained to ascertain the defendant's financial condition was not clear error.

▮▮▮▮ A bankruptcy court will deny discharge under 727(a)(4) if a creditor proves the following: (1) a debtor made a statement under oath; (2) which was false; (3) debtor knew the statement was false; (4) the statement was made with a fraudulent intent; and (5) the statement related materially to the bankruptcy case. *In re Chaplin,* 179 B.R. 123, 127 (Bankr. E.D.Wis.1995) (*citing In re Beaubouef,* 966 F.2d 174, 178 (5th Cir.1992)). The court found defendant made mistakes on her schedules some of which were corrected by amendments. The offense of making a false oath is complete when a knowingly false schedule is sworn to and filed and the offense is not expunged by recanting. *United States v. Young,* 339 F.2d 1003, 1004 (7th Cir.1964) (citations omitted). However, a creditor is still required to prove a debtor knowingly filed a false schedule. Defendant testified extensively concerning the strokes she suffered and the memory loss she currently suffers as a direct result of the strokes. Accordingly, the court found defendant was not aware her statements were false at the time she made them. Considering the evidence presented at trial the court's finding that defendant did not know her statements were false was not clear error.

▮▮▮▮ Under 11 U.S.C. § 727(a)(5) a bankruptcy court has "broad power to de-

cline to grant a discharge...where the debtor does not adequately explain a shortage, loss, or disappearance of assets." *In re D'Agnese,* 86 F.3d 732, 734 (7th Cir.1996) (*quoting In re Martin,* 698 F.2d 883, 886 (7th Cir.1983)). Section 727(a)(5) requires a satisfactory explanation which must consist of more than vague, indefinite and uncorroborated assertions by a debtor. *Baum v. Earl Millikin, Inc.,* 359 F.2d 811, 814 (7th Cir.1966) (*citing In re Sperling,* 72 F.2d 259, 261 (2nd Cir.1934)). However, a bankruptcy court's decision under Section 727(a)(5) will not be overturned unless it is clearly erroneous. *D'Agnese,* at 734 (*citing* Fed. R. Bankr.P. 8013; *Martin,* at 885).

The bankruptcy court found there were discrepancies but as a general matter the discrepancies were completely explained. This finding is supported by the record. Plaintiff herself testified regarding the circumstances surrounding the sale of defendant's Bascom Street property. She testified why defendant did not receive any proceeds from the sale and she also testified she believed defendant's explanation. Additionally, the court found defendant made a good faith effort to respond to discrepancies with limited function and memory. Again, this finding is supported by the record. Defendant testified she did not disclose her prior bankruptcy filing because she did not remember her prior filing. Defendant also testified extensively concerning her medical condition. Given the testimony presented at trial, the bankruptcy court's holding that defendant provided a significant explanation under Section 727(a)(5) was not clear error and it will not be disturbed.

Finally, plaintiff argues defendant violated Section 727(a)(6) when she failed to comply with the court's order to turn over documents. This argument is without merit. Under 11 U.S.C. § 727(a)(6) a creditor has the burden to prove a debtor refused to obey a lawful order of the court. *In re Faber,* 330 B.R. 235, 238 (Bankr.N.D.Ind.2005). Plaintiff argues defendant failed to comply with the Rule 2004 examination ordered by the bankruptcy court. However, plaintiff testified defendant answered all of her attorney's questions at the examination. Accordingly, plaintiff did not meet her burden and the bankruptcy court's decision to dismiss plaintiff's complaint is affirmed.

## ORDER

IT IS ORDERED that the bankruptcy court's dismissal of plaintiff-appellant's adversary complaint is AFFIRMED.