# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 10-2780

IN RE:

LONGVIEW ALUMINUM, L.L.C.,

*Debtor,*

APPEAL OF:

DOMINIC FORTE.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:10-cv-00254—**Samuel Der-Yeghiayan**, *Judge.*

ARGUED JUNE 10, 2011—DECIDED SEPTEMBER 2, 2011

Before BAUER, FLAUM and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* Longview Aluminum, L.L.C. ("Longview") filed for Chapter 11 bankruptcy and its trustee brought an adversary action to set aside and recover payments made less than one year before the bankruptcy filing to Dominic Forte, one of Longview's members. The bankruptcy court found that Forte qualified as an "insider" of Longview and that the trustee could void and recover the transfers. The dis-

trict court affirmed the bankruptcy court. For the following reasons, we affirm.

## I. BACKGROUND

Longview is a limited liability company organized under the laws of Delaware. Longview was formed pursuant to the Amended and Restated Limited Liability Company Agreement of Longview Aluminum, L.L.C. ("Longview LLC Agreement") by five members, who made up a Board of Managers (the "Board"). The Board consisted of Michael Lynch (50% interest), Michael J. Ochalski (13% interest), John L. Kolleng (20% interest), McCall Enterprises, L.L.C. (5% interest), and Forte (12% interest).

From 2001 until June 2002, Forte requested that Longview provide him with business records or allow him to inspect all of Longview's records; Forte's requests were repeatedly denied. On July 10, 2002, Forte sued Lynch, the Board member with the highest percentage interest in Longview, alleging that Lynch had used his controlling interest to bar Forte from reviewing any of Longview's business records and to exclude Forte from participating in any management decision. Longview, as well as Great Lakes Processing, L.C.C. and Michigan Avenue Partners, L.C.C. (two other aluminum companies with which Longview's members were involved or maintained ownership interests), moved to intervene and were named as additional defendants.

On August 20, 2002, the members of the Board other than Forte executed a majority written consent, formally suspending Forte's right to access Longview's information and records until the conclusion of (1) Longview's investigation into whether Forte's requests were made for an improper purpose; (2) an audit of Longview's account; and (3) the discovery in an unrelated case in which Longview was a party. On November 7, 2002, Forte and the defendants to that lawsuit entered into a settlement agreement under which $400,000, plus attorney's fees and costs, would be paid to Forte in exchange for Forte's agreement to leave the Board. On that same day, Longview delivered a $200,000 cashier's check to Forte as an initial payment. On January 16, 2003, Longview delivered a second check to Forte in the amount of $15,000, which represented payment for Forte's attorney's fees and costs.

On March 4, 2003, Longview filed a Chapter 11 petition for bankruptcy relief. The trustee in the bankruptcy proceedings filed the instant adversary action against Forte, seeking to recover the settlement payments as preferential transfers made to an insider within one year of Longview's bankruptcy petition. Forte conceded that the $15,000 payment was a preferential transfer made within three months of Longview's bankruptcy petition and returned the funds. However, Forte denied that the $200,000 payment constituted a preferential transfer. The bankruptcy court ruled in favor of the trustee, finding that Forte was an insider as defined by 11 U.S.C. § 101(31) of the Bankruptcy Code, thereby enabling the trustee to void and recover the $200,000

transfer. The district court affirmed the bankruptcy court. Forte appealed.

## II. DISCUSSION

The question of insider status is regarded as a mixed question of law and fact. *In re Krehl*, 86 F.3d 737, 742 (7th Cir. 1996). We review mixed questions of law and fact de novo. *In re Ebbler Furniture and Appliances, Inc.*, 804 F.2d 87, 89 (7th Cir. 1986).

Pursuant to 11 U.S.C. § 547(b), a bankruptcy trustee is able to avoid certain transfers made by a debtor prior to filing for bankruptcy. Generally, all transfers within 90 days of the debtor's bankruptcy filing are considered preferential and subject to avoidance. 11 U.S.C. § 547(b)(4)(A). When the creditor is an "insider" of the debtor, however, the Bankruptcy Code enlarges the time period for avoidance to one year before the bankruptcy filing. 11 U.S.C. § 547(b)(4)(B). The Bankruptcy Code defines an insider of a corporation as a: (i) director of the debtor; (ii) officer of the debtor; (iii) person in control of the debtor; (iv) partnership in which the debtor is a general partner; (v) general partner of the debtor; or (vi) relative of a general partner, director, officer, or person in control of the debtor.[1] 11 U.S.C. § 101(31)(B). Courts regularly treat this definition as illustrative of

---

[1] The Bankruptcy Code's definition of a corporation includes unincorporated limited liability companies, such as Longview. *See* 11 U.S.C. § 101(9)(A)(iv).

types of insider relationships and not as an exhaustive list. *In re Krehl*, 86 F.3d at 741.

The insider analysis is a case-by-case decision based on the totality of the circumstances, and bankruptcy courts have used a variety of factors in their determinations. One approach focuses on the similarity of the alleged insider's position to the enumerated statutory categories, while another approach focuses on the alleged insider's control of the debtor. If the alleged insider holds a position substantially similar to the position specified in the definition, a court will often find that individual to be an insider. But, based on the legislative history of the statute, our case law has also held that the term insider can also encompass anyone with a "sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor." *Id.* at 741-42 (citing S. Rep. No. 989, 95th Cong. 2d Sess., *reprinted in* 1978 U.S.C.C.A.N. 5787, 5810). For this second approach, courts look to the closeness of the relationship between the parties. *Id.*

Forte first argues that the district court erred when it used the similarity approach to analogize a director of a corporation to a member of an LLC and expanded the term "director" in the definition to include members and managers of an LLC. We disagree.

It is well established that the definition of insider is not an exhaustive list; the definition has been expanded by bankruptcy courts to include positions analogous to those enumerated, including in the LLC context. *See*

*In re Krehl*, 86 F.3d at 741; *In re Barman*, 237 B.R. 342, 348-49 (Bankr. E.D. Mich. 1999) ("[The LLC] is also within the statutory definition of an 'insider' of [the LLC member] because [the LLC member] is one of its three members, and thus holds a position that is analogous to that of a 'director, officer or person in control' of [the LLC]."); *In re Pearson*, No. 1:10-bk-00946MDF, 2010 WL 3956762, at *3 (Bankr. M.D. Pa. 2010) ("In Pennsylvania, members of limited liability companies are individuals with an ownership interest in the LLC and a right to participate in the management of the business. . . . Since [the LLC member] is a member of the LLC, [the LLC] is an 'insider' of [the LLC member]."); *In re Die Fliedermaus LLC*, 323 B.R. 101, 111 (Bankr. S.D.N.Y. 2005) ("[T]he [New York Limited Liability Company Law] presumptively puts members in control of the LLC, and as such they are in a position to exert influence over the LLC. This sufficiently places them within the parameters of the Bankruptcy Code's definition of insider."). When the position held by the alleged insider is not enumerated in the statute, the relevant inquiry for the court is to consider whether the relationship at issue is similar to or has characteristics of any of the defined relationships.

The district court looked to both Delaware corporate and LLC law to properly analogize a director of a corporation to a member of an LLC. Under Delaware law, a corporation must "be managed by or under the direction of a board of directors . . . ." 8 Del. C. § 141(a). With respect to an LLC, Delaware law states that "[u]nless otherwise provided in a limited liability company agree-

ment, the management of a limited liability company shall be vested in its members . . . ." 6 Del. C. § 18-402. The district court concluded that directors generally have the authority to manage a corporation and members generally have the authority to manage an LLC, and thus found a member analogous to a director. Forte, however, argues that because an LLC manager's powers can be specified by an LLC agreement, an LLC manager's authority can be vastly different from that of a director of a corporation, depending on the LLC agreement. This argument is unpersuasive. By default, under Delaware law, authority is vested in the members of an LLC. Furthermore, in this case Longview's own LLC agreement specifically provided its members with authority analogous to that of a director of a corporation, stating that "the authority, power, and responsibility to manage the operations and affairs of [Longview] shall be vested in the Board of Managers and the Members." The district court did not err in concluding that a member of an LLC can be a statutory insider within the meaning of 11 U.S.C. § 101(31)(B).

Notwithstanding the foregoing, we also recognize, as the bankruptcy court and the district court did, that "it is not simply the title 'director' or 'officer' that renders an individual an insider; rather, it is the set of legal rights that a typical corporate director or officer holds." *In re Longview Aluminum, LLC*, 419 B.R. 351, 355 (Bankr. N.D. Ill. 2009). We thus not only look to the individual's title, but also his relationship to the company.

Here, Forte argues that because he was prevented from managing or participating in a meaningful way

in some of Longview's affairs, he was in no way in
control of Longview. Forte points out that as early as
2001, he was denied access to Longview's books and
records, and that in August 2002, before the $200,000
transfer was made, the majority of the Board executed a
formal written consent excluding him from viewing
Longview's books and records. Longview responds that
although the majority written consent removed Forte's
unfettered access to the books and records, this was
merely a temporary suspension, and, moreover, did not
remove Forte from his position as a member of Longview
on the Board. The district court did not find the effect
of the majority written consent to be enough to remove
Forte's status as an insider, and neither do we. There
was never a formal vote or document executed
that removed Forte's member status. Forte's surviving
member status caused him to retain meaningful rights
and control given to members under Longview's LLC
Agreement; significantly, Forte still retained voting
rights in the company. At the time of the $200,000 trans-
fer in November, Forte still held a formal position on
the Board and did not resign until after he received
the transferred funds.

Forte directs our attention to several non-precedential
cases he argues are similar to his own and cites them
for the proposition that an individual in a position akin
to a director was found not to have insider status
because he did not actively participate in corporate man-

agement.[2] However, those cases are entirely distinguishable from the one before us. In the cited cases, the officer, director, or member completely relinquished, either by sale, ouster, or otherwise, all their rights and authority in the respective corporation or LLC, but their resignation or departure was not formalized until later in time. The courts found that each of those individuals did not have insider status because the individual was not "in control of" the company well before the formal resignation or departure. Forte's case is unlike those cases where each individual surrendered all his rights in the company before his formal resignation or departure; here, we reiterate that Forte still had rights and control over Longview as a member on the Board.

Finally, Forte argues that because members and managers are not contemplated within the definition in the statute, they can only be considered insiders if they fall within the non-statutory criteria, and here, there was no close relationship or less than arm's-length transaction. We acknowledge that courts consider those factors and often use the control approach, but in this situation, where the court is determining whether a member or manager of an LLC is a statutory insider, the similarity approach yields a better interpretation of the statute.

---

[2] Forte cites to *Butler v. Shaw*, 72 F.3d 437 (4th Cir. 1996); *In re Carr & Porter, LLC*, 416 B.R. 239 (Bankr. E.D. Va. 2009); *In re Babcock Dairy Co. of Ohio*, 70 B.R. 662 (Bankr. N.D. Ohio 1986); *In re Guardian Equip. Corp.*, 20 B.R. 824 (Bankr. S.D. Fla. 1982).

The bankruptcy and district courts applied the similarity approach, and we find that the court did not err in doing so.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

9-2-11